[Crim. No. 1244. First Appellate District, Division Two.—November 2, 1925.]

# THE PEOPLE, Respondent, v. HOWARD W. BALLARD, Appellant.

[1] CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—EVIDENCE—INTENT—PROVINCE OF JURY.—In this prosecution on a charge of obtaining money by false pretenses with reference to a purported oil-well venture, the testimony of the complaining witness, and of other victims who had given defendant money, taken together, gave a very clear picture of defendant's methods and activities, and the question of fraudulent intent was one for the jury.

[2] ID.—ORGANIZATION OF OIL CORPORATION—RIGHT TO SELL STOCK—FRAUDULENT REPRESENTATIONS—EVIDENCE.—In such prosecution, the evidence was sufficient to justify the verdict of guilty, based upon the count of the information which charged that defendant, by false and fraudulent representations, obtained the money of the prosecuting witness by falsely and fraudulently representing to him that there was then being organized by defendant, under the laws of California, a corporation to bear a stated name, for the purpose of drilling for oil in a designated county, and that defendant was authorized on behalf of the organizers of said corporation to solicit and receive subscriptions for shares of the capital stock, whereas there was no such corporation being organized by defendant or anyone else and defendant was not authorized on behalf of the organizers of said corporation to solicit and receive subscriptions of money for such stock or for any purpose for said corporation, as defendant well knew, and that the complaining witness believed and relied upon said fraudulent representations and was deceived thereby and induced thereby to deliver to defendant a specified sum of money for the purchase of said stock.

[3] ID. — CREATION OF CORPORATION — FALSE REPRESENTATIONS — EVIDENCE—VERDICT.—In such prosecution, the people having established the false representations as to the creation and existence of the alleged corporation, that was sufficient to sustain the verdict of guilty.

[4] ID.—ABSENCE OF PERMIT—ERRONEOUS ADMISSION OF EVIDENCE—ABSENCE OF PREJUDICE.—In such prosecution, conceding that the

---

1. See 12 Cal. Jur. 475.
2. See 12 Cal. Jur. 455.
3. See 12 Cal. Jur. 470.
4. See 8 Cal. Jur. 606.

trial court erred in permitting a deputy from the office of the commissioner of corporations to testify, over defendant's objection, that no permit had been issued for the selling of securities of the alleged corporation, it did not appear that this testimony could have prejudiced defendant, and as it appeared from the record that justice had been done by the verdict and judgment, such error did not justify a reversal of the judgment.

(1) 25 **C. J.**, p. 653, n. 73.   (2) 25 **C. J.**, p. 650, n. 42.   (3) 25 **C. J.**, p. 651, n. 46, 47.   (4) 17 **C. J.**, p. 329, n. 18.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

Walter H. Duane for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment convicting him of a felony, to wit, obtaining money by false pretenses. The record presents the following facts, which appellant contends are insufficient to sustain the verdict of guilty:

About April, 1922, defendant met the complaining witness, Johnsen, upon a ferry-boat traveling between San Francisco and Oakland. Johnsen was a deck-hand and defendant was a passenger on the boat. Defendant engaged Johnsen in conversation and inquired if he had any money. Johnsen said he had about $2,000 in the bank and was getting four per cent interest upon it. Defendant told him that he, Johnsen, was getting too old to work such long hours and said: "I can make it better for you than that, and if you come to my office for every dollar you invest, I guarantee next October you will have to work no more. Johnsen said he couldn't come to defendant's office because he had no leisure time. Defendant inquired where he lived and was given the address. The following day defendant called at Johnsen's home and said: "Mr. Johnsen you come down; we are having a stockholders' meeting today. You dig up a thousand dollars and by October

you will have $5 for every one you invest." Johnsen re-
plied that he could not come and defendant said: "Three
o'clock is the stockholders' meeting; got to have the money
in by that time." Johnsen, thereupon, went to the bank
with defendant in defendant's automobile and withdrew
$1,000 and gave it to defendant. The next day Johnsen
received through the mail a receipt reading as follows:
"I hereby subscribe the sum of one thousand dollars for
preliminary purposes to be used as such in the Lafayette
Oil & Gas Company now organizing; such sum to partici-
pate in the development fund as an investment to share
*pro rata* in all profits and dividends which may accrue here-
after from the actual organization of said corporation.
Signed this 22nd day of April, 1922. H. A. Johnsen. I,
Howard W. Ballard, have this day received of H. A. John-
sen the sum of one thousand dollars to be used for the
purposes stated above. Howard W. Ballard."

About May 11, 1922, defendant again called at John-
sen's home and said he wanted $300 more, explaining:
"We are taking up 300 acres more of land. All the rest
of the stockholders are willing to do it and you must fol-
low up. By October 1st, you will have lots of money.
You will have five or six dollars to every one you invest."
Mrs. Johnsen, who was a woman over eighty years of age,
hearing this conversation, expressed her doubt of the out-
come of the investment and began to cry. Defendant said:
"Don't think that of me. By October 11, you will have
lots of money and you will have a limousine and Harry
will drive you around, Mrs. Johnsen." Johnsen demurred,
but finally yielded to defendant's persuasion and went to
the bank and withdrew $300, which he gave to defendant
and for which he received a receipt similar to the one
hereinbefore set forth. At this time defendant stated that
the company was formed and they were having stockhold-
ers' meetings and it was called the Lafayette Oil Company.
Johnsen heard nothing more from defendant until about
September 11th, when defendant called at Johnsen's home
about 6 or 7 o'clock in the morning. Johnsen testified that
defendant said: "I come here to tell you we took out 300
more acres of land, adjoining land, and all the rest of the
stockholders is in for it again and I want $300." Johnsen
said he didn't have $300 to give to defendant and defend-

ant told him to come to the city as soon as possible and bring the money. Johnsen and his wife came to defendant's office in San Francisco and brought him $300 additional. Johnsen testified that this money was obtained from him to buy another 300 acres of land for the Lafayette Oil Company. It also appears that in October Johnsen went to the defendant's office and defendant attempted to get some more money from him, but failed. Johnsen testified that he believed the representations made to him by defendant and, because of them, parted with his money.

Defendant's own testimony is to the effect that no corporation known as the Lafayette Oil Company was ever formed and no additional land nor any land was ever purchased; that when he secured the first $1,000 from Johnsen, he had a lease, individually, of some land in Contra Costa County upon which he hoped to find oil; that on October 24, 1922, together with two other persons as trustees, he executed a declaration of trust, by which said persons declared themselves trustees of a trust to be designated as the California Oil and Gas Company. This declaration of trust was never filed and was never operative. Defendant stated there was an "understanding" that he would turn over his lease to these trustees and that this trust declaration with reference to the California Oil and Gas Company was to take the place of the incorporation of the Lafayette Oil Company. However, defendant admits that Johnsen was never consulted about this change nor given any interest in the California Oil and Gas Company and, indeed, this legal entity attempted to be created appears never to have had any assets at all. Defendant admits that he never executed any assignment or transfer of the lease which he held to the trustees, but was content to allow the matter to rest upon the assumption that "there is a little honor among men." It also appears that this lease and its extensions had expired at the time of the execution of the declaration of trust, so there was nothing that could be assigned.

Later, defendant closed his offices in San Francisco and when he was arrested he was in Los Angeles promoting another oil company known as the Lessors Oil Company. His general defense was that if he had not been arrested in July, 1923, he would have acquired some valuable land

and oil rights for the last-named company and would have added these to the Contra Costa County lease and would have given the subscribers to the stock of the proposed Lafayette Oil Company the benefit of an income realized from such sources.

It is not surprising that the jury refused to take this statement of future intentions as an evidence of good faith, in view of the many incidents appearing in the record which indicate bad faith and in view of the fact that the Contra Costa County lease had expired and that some practical legal obstacles would prevent subscribers to the stock of one company without assets from participating in the assets of a different company. Several other victims of defendant testified that they had given him money upon representations similar to those made to Johnsen. To some of these he gave receipts showing them to have subscribed to the stock of a corporation to be called the Contra Costa Oil Company. [1] The testimony of all of these persons, taken together, gives a very clear picture of defendant's methods and activities. The question of fraudulent intent was one for the jury. (*People* v. *Boyd,* 67 Cal. App. 292 [297 Pac. 873].)

[2] The count of the information upon which he was convicted charged that defendant, on or about September 11, 1922, by false and fraudulent representations, obtained Johnsen's money by falsely and fraudulently representing to said Johnsen that there was then being organized by him, under the laws of California, a corporation to be named Lafayette Oil and Gas Company, for the purpose of drilling for oil in the county of Contra Costa, California, and that the said Ballard was authorized on behalf of the organizers of said corporation to solicit and receive subscriptions for shares of the capital stock, whereas there was no such corporation being organized by Ballard or anyone else and Ballard was not authorized on behalf of the organizers of said corporation to solicit and receive subscriptions of money for such stock or for any purpose for said corporation, as Ballard well knew; that Johnsen believed and relied upon said fraudulent representations and was deceived thereby and induced thereby to deliver to Ballard $300 for the purchase of said stock.

The foregoing recital of testimony taken from the record establishes the allegations in the information and is an answer to appellant's position that the evidence was insufficient to justify the verdict. It is clear that defendant obtained Johnsen's money by representing that he was organizing a corporation to be known as the Lafayette Oil & Gas Company. He was not organizing such a corporation. The most that can be said, even from his own testimony, is that he was thinking about doing so. He never put this thought into execution, if he entertained it. He stated that he decided to change the name to California Oil & Gas Company and this might have furnished him some excuse if he had organized such a corporation or even filed and operated under the declaration of trust, naming such a legal entity, and had, thereafter, transferred assets such as he had represented the Lafayette Oil Company to have to said California Oil & Gas Company, and permitted the subscribers to the Lafayette Oil Company to share in the assets of the California Company. But he did none of these things. The facts appear to be that the money raised to purchase 300 acres of land for the nebulous Lafayette Company was never used to purchase any land and the oil lease supposed to belong to this company to be created was never assigned to the California Company and, indeed, had expired when the declaration of trust was executed. [3] The prosecution established the false representations as to the creation and existence of the Lafayette Oil & Gas Company and that is sufficient to sustain the verdict. (*People* v. *Griesheimer,* 176 Cal. 44 [167 Pac. 521]; *People* v. *Gibbs,* 98 Cal. 661 [33 Pac. 630].)

[4] There are some assignments of error in the admission of testimony by the trial court, such as the objection to the testimony of a deputy from the office of the corporation commissioner, who testified that no permit had been issued for the selling of securities of the Lafayette Oil Company. It is contended that as the defendant was not charged with the offense of selling stock without a permit, the testimony should have been excluded. It does not appear that this testimony could have prejudiced the defendant, and, certainly, with a record such as the one before us, we would not be justified in reversing the judgment for an error of this kind, if we concede it to be such, where

it appears that justice has been done by the verdict and judgment.

There are no other matters requiring discussion and the judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.