[Crim. No. 3023. In Bank.—November 9, 1927.]

THE PEOPLE, etc., Respondent, v. PAUL B. RABE, Appellant.

[1] CRIMINAL LAW — OBTAINING PROPERTY BY FALSE PRETENSES — DIFFERENT OFFENSES—INDICTMENTS.—In a prosecution for obtaining property by false pretenses, the contention that the defendant stands convicted upon three counts of the indictment which, in fact, are but repetitions of one and the same offense, is without merit, where, although the identical person is alleged in each count to have been defrauded by the accused by employing the same false representations, the property set out in the indictment in each count was alleged to have been obtained at a different time and was different in character and in value from the property alleged to have been acquired by the false representations set out in the other counts of the indictment.

[2] ID.—FRAUDULENT INTENT—DIFFERENT TRANSACTIONS.—Where the proof in a given case is sufficient to show the existence of a fraudulent intent or purpose on the part of an accused to obtain property from another by false or fraudulent representations, the making of the first false representations which moved or induced the person to whom they were made to part with his property does not immune a defrauding person from punishment for subsequently obtaining from said person other property which was parted with under the influence of the fraudulent representations, which were still operating upon the mind of the defrauded person at the time he passed his property into the hands of said designing person.

———

1. See 14 Cal. Jur. 60.

[3] ID.—FRAUDULENT ACT — ACCOUNTABILITY FOR.—No person will be permitted to profit by his fraudulent acts or conduct, and if one designedly creates in the mind of another a false belief in the existence of a material fact he will be held to a strict accountability for its effect upon the mind of the person designed to be influenced thereby, and the burden is upon the person creating such false belief to show that it has been removed, else it will be presumed, in the absence of proof to the contrary, to have influenced the actions of the person imposed upon in his dealings with the person who is responsible for said false belief.

[4] ID.—UNION OF ACT AND INTENT—COMPLETION OF CRIME.—It is a statutory rule that in every crime or public offense there must exist a union or joint operation of act and intent; and the intent to obtain property by false or fraudulent means is shown by the plan devised by the person contemplating the offense, but the crime is not complete until such person obtains possession of the property of the other as a result of fraudulent representations.

[5] ID. — OBTAINING REAL PROPERTY BY FALSE PRETENSES—SECTION 532, PENAL CODE. — Since the amendment to section 532 of the Penal Code, obtaining possession of real property by false pretenses is a crime and is punishable in the same manner and to the same extent as larceny of the money or property so obtained, and the punishment is to be measured by the property's convertible money value.

[6] ID.—DEPARTURE FROM COMMON LAW—POWER OF LEGISLATURE.—It was competent for the legislature to depart from the common law by including real property in the list of property that shall be subject to the provisions of section 532 of the Penal Code.

[7] ID. — REPRESENTATIONS — FORMATION OF CORPORATION AND PURCHASE OF PROPERTY — BASIS FOR PROSECUTION.—A representation that a corporation, whether completely formed or in its formative process, has purchased land and is to be conducted or operated according to specific or definite plans and in accordance with a fixed disclosed program, and is to be officered by persons well known for their business probity and integrity, if false, may furnish the basis for a prosecution for obtaining property by false pretenses, the essence of which is gaining possession of property by false representations.

[8] ID. — STATUTORY CONSTRUCTION. — Effect should be given to each word and phrase of a statute if fairly and reasonably possible,

---

4.  See 7 Cal. Jur. 850; 8 R. C. L. 60.
6.  See 12 Cal. Jur. 460.
8.  See 23 Cal. Jur. 730; 25 R. C. L. 1004.

and it was the intent of the legislature in the amendment to section 532 of the Penal Code to make the obtaining of property by false pretenses, whether real or personal, an offense, thereby removing the artificial distinction which had existed between real and personal property.

[9] ID. — SUFFICIENCY OF EVIDENCE. — In this prosecution for obtaining money and property by false pretenses it is held that the evidence was sufficient to sustain the verdict.

[10] ID. — EVIDENCE — BURDEN OF PROOF.—In a prosecution for obtaining money and property by false pretenses, where it was shown that representations were made, among others, that the organizers or promoters of a company proposed to be organized had purchased from a certain corporation and practically paid for a certain number of acres of land, and it was positively established that they had not purchased from such corporation said land or any other land, if the defendant or any one associated with him had purchased said land from any other source not covered by his representation, it was his duty to present such evidence after proof of the falsity of the representations.

[11] ID.—VARIANCE—WAIVER—APPEAL.—The defendant cannot avail himself on this appeal of the claim that the proof shows a false representation that the purchase of the 140 acres of land was made of the said corporation and that this proof is at variance with the allegation that they had purchased 140 acres, for the reason that if it should be conceded that there is a material variance, the point was not presented to the trial court.

[12] ID.—MISREPRESENTATIONS—PROOF.—In such a case, it is sufficient if one material misrepresentation be proved.

[13] ID.—CORPORATION TO BE ORGANIZED—SUBSCRIPTIONS FOR STOCK.— It cannot be maintained that the subscribers for stock in a proposed corporation in such case received what they paid for, where every representation of fact, every suggestion and the entire scheme was based upon the immediate organization of the corporation, which was never done, and the subscribers got nothing except a subscription agreement which was so artfully drawn as to leave out a time limit for incorporation, apparently because the actual incorporation was represented to be almost a closed incident.

[14] ID.—OBTAINING OF MONEY — CASHING OF CHECKS. — In such a case, the claim that the proof was insufficient to show the obtaining from one of the defrauded parties of a certain sum in cash cannot be maintained, where the evidence showed that the party invested a certain sum with a certain company with whom the defendant was at the time associated, that she executed an

12. See 12 Cal. Jur.. 469.

assignment of her claim for the return of the money to the defendant and that when the check was made out to her an associate of the defendant brought the check to her, which she indorsed and delivered to said party, who in turn testified he delivered it to the defendant, and thereafter the defendant wrote to the defrauded party saying that he had received confirmation of her subscription. The jury, under the circumstances, was justified in believing that the defendant had cashed the check.

[15] Id. — Causal Connection Between False Pretenses and Obtaining Property. — There was a causal connection between the false pretenses and the obtaining by defendant of the money and property of the complaining witness in this case.

[16] Id.—Subscription Agreements—Money Paid to Defendant as Trustee — Variance. — In such a case, the contention cannot be maintained that as the subscription agreement recited that the moneys were paid to the defendant as trustee, there was a fatal variance between the proof and the allegation that the defendant obtained the money and property, for the crime was complete upon the defendant obtaining the money by false and fraudulent representations, and it was not necessary to show what he did with it. The law does not make it an element of the offense of obtaining money or property under false pretenses that it shall be obtained for the person making the pretenses himself, or that he shall be intended to obtain it for another.

---

(1) 31 C. J., p. 783, n. 76.   (3) 25 C. J., p. 610, n. 28.   (4) 25 C. J., p. 605, n. 22.   (5) 25 C. J., p. 656, n. 17.   (6) 25 C. J., p. 656, n. 16.   (7) 25 C. J., p. 590, n. 93.   (8) 25 C. J., p. 608, n. 2.   (9) 25 C. J., p. 650, n. 42.   (11) 17 C. J., p. 55, n. 99.   (12) 25 C. J., p. 640, n. 53.   (13) 25 C. J., p. 651, n. 47.   (14) 25 C. J., p. 653, n. 59.   (15) 25 C. J., p. 653, n. 58.   (16) 25 C. J., p. 637, n. 36.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Arthur Keetch, Judge. Affirmed.

The facts are stated in the opinion of the court.

Howe & Wellman, Keeler, Fickert & French and C. M. Fickert for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

---

15. See 12 Cal. Jur. 467.

SEAWELL, J.—The facts of this case are more specifically set out in the opinion of the court of appeal, second district, division two, Thompson, J., which is appended as a part of our opinion. We will, therefore, not repeat them in our introductory observations.

The petition for hearing by this court laid much stress upon two points passed upon by said district court. [1] The first is that the defendant stands convicted upon three counts of the indictment which, in fact, are but repetitions of one and the same offense. We think this contention is without merit. It is true that the identical person is alleged to have been defrauded by the accused by employing the same false representations in each count, but this does not reduce the three separate acts to one act. In each count of the indictment the property obtained by appellant was obtained at a different time and was different in character and value from the property alleged to have been acquired by the false representations set out in the other counts of the indictment. The theory of appellant is that a single crime has been split into several parts and each part of the whole has been made the basis of a criminal action. This contention is not maintainable. [2] Where the proof in a given case is sufficient to show the existence of a fraudulent intent or purpose on the part of an accused to obtain property from another by false or fraudulent representations, the making of the first false representations which moved or induced the person to whom they were made to part with his property does not immune the defrauding person from punishment for subsequently obtaining from said person other property which was parted with under the influence of the fraudulent representations which were still operating upon the mind of the defrauded person at the time he passed his property into the hands of said designing person.

[3] No person will be permitted to profit by his fraudulent acts or conduct, and if one designedly creates in the mind of another a false belief in the existence of a material fact he will be held to a strict accountability for its effect upon the mind of the person designed to be influenced thereby, and the burden is upon the person creating such false belief to show that it has been removed, else it

will be presumed, in the absence of proof to the contrary, to have influenced the actions of the person imposed upon in his dealings with the person who is responsible for said false belief. [4] It is a statutory rule that in every crime or public offense there must exist a union or joint operation of act and intent. (Pen. Code, sec. 20.) The intent to obtain property by false or fraudulent means is shown by the plan devised by the person contemplating the offense, but the crime is not complete until such person obtains possession of the property of the other as a result of fraudulent representations. In other words, the crime is accomplished when an accused receives into his possession property which he had planned to fraudulently gain. So in the instant case, while a general intent to defraud may have been formed in the mind of the accused at the time of or before he completed the first offense, the other crimes charged were completed as separate and distinct offenses on the days that he unlawfully took possession of the property described in the several counts of the indictment. If appellant's theory be correct and the value of the property first acquired had been under $200 the appellant could have been put to his trial for a misdemeanor only, and other subsequent offenses would have been merged into the misdemeanor prosecution. This anomalous result would of itself cause us to pause in considering appellant's theory if that was all that could be said in rebuttal. Clearly the several counts set out different and distinct crimes. The cases cited by appellant reannounce a well-recognized rule, which is not applicable in the instant case. It is the act of getting possession of or of obtaining property by false and fraudulent representations which the law punishes as a crime.

*People* v. *Cummings,* 114 Cal. 437 [46 Pac. 284], which appellant cites as an authority sustaining his contention, merely interpreted section 532 of the Penal Code, a statute which defined the crime of obtaining property by false and fraudulent representations and prescribed a penalty therefor, as and of the time that case was written. [5] It was there held that real property was not named as a kind of property that was within the provisions of section 532 of the Penal Code. That section has now been amended to read:

"Every person who knowingly and designedly, by any

false or fraudulent representation or pretense, defrauds any other person of money, labor, or property, whether real or personal, . . . and by thus imposing upon any person obtains credit, and thereby fraudulently gets possession of money or property, or obtains the labor or service of another, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

The crime of obtaining possession of real property is punishable "in the same manner and to the same extent as for larceny of the money or property so obtained." It is very clear that the punishment prescribed for the crime of gaining possession of real property by false representations is to be measured by its convertible money value. This is the natural meaning of the statute and is such an interpretation as the average citizen would place upon it. The crime is punishable as if the property was capable of asportation according to its value reduced to money or a chattel. [6] There is no doubt that it was competent for the legislature to depart from the common law by including real property in the list of property that shall be subject to the provisions of section 532 of the Penal Code. The offense of false pretenses has always been construed as largely analogous to and closely bordering upon that of larceny. (*People* v. *Cummings, supra.*) The legislature has provided the same punishment for gaining the possession of real property by fraudulent means as is provided by law for obtaining personal property by like means. The degree of punishment in each case depends upon the value of the property fraudulently obtained. The punishment is as definitely prescribed as it is for larceny. There is no difficulty in the way of applying the penal provisions of the statute which fixes the penalty for larceny in its two degrees to the crime described by the indictment in the instant case by giving heed to section 4 of the Penal Code, which provides:

"The rule of the common law, that penal statutes are to be strictly construed has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

*People* v. *Cummings, supra,* cannot, in our view, longer be regarded as authority for the holding which is repeated in *People* v. *Folcey,* 78 Cal. App. 62 [247 Pac. 916], to the effect that "since real estate is not the subject of larceny the words 'punishable in the same manner and to the same extent as for larceny of the money or property so obtained' are meaningless in relation to real property." The statute was adopted with the view of checking a variety of frauds, tricks, and false representations so commonly practiced as to become a menace to the ownership of real property. The punishment, inasmuch as the crime partakes of a larcenous intent, was appropriately fixed by adopting the penal clause of the statute prescribing the penalty for the commission of a larceny.

We have given consideration to appellant's contentions, many of which are extremely technical, and after so doing feel convinced that the evidence is sufficient in substance to sustain the verdict of the jury. An attempt, marked by considerable industry, is made by appellant to show that the alleged representations charged to appellant did not relate to a past or existing fact, and were nothing more than the expression of opinions as to future events, or the expression of hope, or the making of promises, or the expression of opinion on the part of appellant, and, therefore, were not actionable at criminal law. The scheme conceived by the appellant, as set out in the exhibits, was quite elaborate in its initiatory stage, and contained language which undoubtedly related to the existence of present facts and conditions, as well as to future probabilities and possibilities. [7] A representation that a corporation, whether completely formed or in its formative process, has purchased land and is to be conducted or operated according to specific or definite plans and in accordance with a fixed disclosed program, and is to be officered by persons well known for their business probity and integrity, if false, may furnish the basis for the kind of action here prosecuted against the appellant, the essence of which is gaining possession of property by false representations.

The opinion of the district court of appeal, adopted as a part of our opinion, follows:

"The appellant was charged with the offense of obtaining money and property by false pretenses. The indict-

ment was in four counts, upon all of which the jury returned a verdict of guilty. Judgment was pronounced upon the verdict, the sentence was suspended upon the third and fourth counts and after denial of appellant's motion for a new trial he instituted this appeal from the judgment and order denying his motion.

"The first count charged the obtaining on August 1, 1924, of 200 shares of capital stock of the Moreland Truck Company and 20 shares of the capital stock of the First Federal Securities Company, taken together, of the total value of $4,000, from Elmer E. Owen. The second and third counts charged the obtaining on August 2 and 5, 1924, from Henrietta McGaw, $1,250 and $4,000, respectively, and the fourth count of obtaining on August 15, 1924, from the same person, a deed to real property of the value of $11,000. In each instance the money or property was advanced in payment of subscriptions for what was termed preorganization stock of a proposed corporation to be known and styled the Long Beach Dock and Terminal Company, which company was not incorporated upon any of the dates of the subscriptions or subsequently.

"The misrepresentations were the same in each instance and were as follows: 1. That defendant was taking preorganization subscriptions for the purchase of capital stock of the Long Beach Dock and Terminal Company; 2. That the company had bought and practically paid for 140 acres of harbor land, upon which to erect docks and warehouses; 3. That a bond issue of $6,000,000 had been 'arranged for' to cover the cost of construction; 4. That General George W. Goethals had been secured to act as chairman of the board of directors and as supervisor of construction; 5. That the promoters had secured the consent of Senator Shortridge, Congressman Lineberger and C. H. Windham, city manager of Long Beach, to act as officers and directors of the company; 6. That the subscriptions were worth the amount charged therefor.

"At the opening of the trial defendant objected to the introduction of evidence on the ground that the facts stated did not constitute a public offense; that matters were stated which constituted a justification and that there was not a compliance with sections 950, 951 and 952 of the Penal Code. He now urges the same objections as insuffi-

202 Cal.—27

ciencies of the indictment. His position may be stated as follows: That the indictment shows that the defendant was in fact taking preorganization subscriptions; that there is no allegation that the subscriptions were not of the value charged therefor and that as to all other representations they relate to future acts, i. e., the organization in the future of a company to take over the land and to be officered by the individuals named. This thought runs all the way through appellant's brief and is the foundation upon which rests most of his argument. Such is not the effect of the allegations. They are very similar to the facts in the case of *People* v. *Ballard,* 75 Cal. App. 29 [241 Pac. 596]. From a bare recital of the allegations one would judge that all that remained to constitute the Long Beach Dock and Terminal Company a corporate entity was to comply with legal formalities; that to all intents and purposes the personnel of its directors had been determined; that its promoters were sufficiently financed to have purchased for it most valuable real property holdings and had arranged very extensive financing. All of these things were representations of past acts and present conditions and not outbursts of the prophet looking with optimistic eye into the distant future. They are all alleged to be false, and we can hardly imagine what might be added to bring it more squarely within the condemnation of the statute. The allegation of falsity not only covers the representation that it was preorganization stock, but also that it was not worth the price charged.

"Outside of these objections, however, we do not find a serious question concerning the fourth count of the indictment. While appellant pays scant attention to the third and fourth counts by reason of the fact that sentence was suspended, there is sufficient in his brief that we have concluded that we must examine and pass upon them. As has been stated, the indictment shows the obtaining of a deed to real property of the value of $11,000. Counsel says that this count is fatally defective on the authority of *People* v. *Folcey,* 78 Cal. App. 62 [247 Pac. 916], wherein it is held that no penalty is provided for obtaining real property by false pretenses. While a petition for a hearing of this case in the supreme court was denied, we feel that under the authority of *People* v. *Davis,* 147 Cal.

346 [81 Pac. 718], and *Bohn* v. *Bohn,* 164 Cal. 532 [129
Pac. 981], we are not bound to accept the language as
precedent, but should give expression to the reasons for
our dissent therefrom. The entire history of larceny, it
is true, refers to the felonious taking and carrying away
of personal property, so that there is no such thing as the
larceny of real property. When on account of defects in
the common law relative to cheats and expanding com-
merce it was found necessary to extend the law by statute,
the similarity of the offense to larceny operated to confine
the statute to personal property, in which condition section
532 of the Penal Code was found when the case of *People*
v. *Cummings,* 114 Cal. 437 [46 Pac. 284], came before the
supreme court. To remedy the deficiency thus existing
in the law, and pointed out in this case, the legislature
amended section 532 to read as follows, the amendment
being here set forth in italics: 'Every person who know-
ingly and designedly, by any false or fraudulent repre-
sentation or pretense, defrauds any other person of money,
labor, or property, *whether real or personal,* or who causes
or procures others to report falsely of his wealth or mer-
cantile character, and by thus imposing upon any person
obtains credit, and thereby faudulently gets possession of
money or property, or obtains the labor or service of an-
other, is punishable in the same manner and to the same
extent as for larceny of the money or property so ob-
tained.' (Italics ours.) It will be noted, of course, that
the concluding language was not changed, so that if there
be a penalty for obtaining real property by false pretenses
we must insert the words 'like value' or some similar ex-
pression, after the word property, where it last occurs in
the section, in which event the final portion would read as
follows: 'is punishable in the same manner and to the
same extent as for larceny of the money or property of like
value so obtained.' If this construction be not adopted
the amendment is fruitless and the words 'whether real or
personal' mean nothing. [8] It is not our understanding
of the rules of construction that such should be the case,
but that rather effect should be given to each word and
phrase if fairly and reasonably possible. Many cases
might be cited to support this rule. It has been said
(*Maguire* v. *Cunningham,* 64 Cal. App. 536–543 [222 Pac.

838]), that the distinction between real and personal property, so far at least as actions to quiet title are concerned, is purely artificial. This particular artificiality was removed by amendment of section 738 of the Code of Civil Procedure in 1921, and in this age of industrial development, where it is almost as easy to defraud one of real property as of personal property, we think the plain intent of the legislature to remove the artificiality under discussion should govern and that we should hold the fourth count of the indictment to be sufficient.

"The next assertion of appellant is that the evidence is insufficient **[9]** to support the verdict. We have carefully examined the voluminous transcript and fail to see how the jury could have arrived at any other verdict. **[10]** Concededly Senator Shortridge, Congressman Lineberger and Mr. Windham had never consented to become officers and had never consented to the use of their names. The representations were freely made that 'they,' which 'they' must mean the organizers or promoters of the proposed company, had purchased from the Union Pacific and practically paid for 140 acres of harbor land—and it was positively established that they had not purchased from the Union Pacific 140 acres or any other land. If the defendant or anyone associated with him had purchased 140 acres of land from any other source not covered by his representation, it was his duty to present such evidence after proof of the falsity of the representation. (*Shemwell* v. *People,* 62 Colo. 146 [161 Pac. 157].) Instead, on the stand he denied having made the representation. **[11]** Nor can the defendant avail himself of the claim that the proof shows a false representation that the purchase of 140 acres was made of the Union Pacific and that this proof is at variance with the allegation that they had purchased 140 acres, on this appeal, for the reason that if such amounts to a material variance, and we do not so believe, it was not presented to the trial court. (*People* v. *Fraser,* 81 Cal. App. 281 [253 Pac. 340]; *People* v. *Gonzales,* 69 Cal. App. 609 [231 Pac. 1014]; *People* v. *Fuski,* 49 Cal. App. 4 [192 Pac. 552].) **[12]** It is sufficient if one material misrepresentation be proved. (*People* v. *Fraser, supra; People* v. *Griesheimer,* 176 Cal. 44 [167 Pac. 521].)

In this case several misrepresentations were conclusively established.

[13] "Nor can it be seriously argued that the subscribers received what they paid for. As has been indicated, every representation of fact, every suggestion, the entire scheme, was based upon the immediate organization of the corporation, which was never done. The subscribers got nothing except a subscription agreement which likewise was so artfully drawn as to leave out a time limit for incorporation, apparently because the actual incorporation was represented to be almost a closed incident. . . .

[14] "Attack is next launched upon the testimony specially directed toward count one, and it is claimed to be insufficient to show the obtaining from Mrs. McGaw of $1,250 in cash. The testimony shows that she had invested $1,500 with Harry C. Weist Company, with whom the defendant was at the time of investment associated. She executed an assignment of her claim for the return of the money to the defendant. Then when the check was made out to her—Mr. Farrell, an associate of the defendant, brought the check to her; she indorsed it; delivered it to Mr. Farrell, who in turn says he delivered it to the defendant. On August 18 the defendant wrote to Mrs. McGaw, saying that he had received confirmation of her subscription of August 1, which is the subscription in question. Under these circumstances we think the jury were fully justified in believing that the defendant had cashed the check. In the case of *People* v. *Whalen*, 154 Cal. 472 [98 Pac. 194], which was a case of obtaining money by false pretenses, it appeared that Mrs. Martin was induced to buy 100 shares of stock at the price of $1,000 and gave the defendant a check for $1,200 in payment for the 100 shares, plus 20 shares purchased by her sister. 'The check was given on May 3, 1905. The defendant remained in Sacramento, where this transaction occurred, for several weeks thereafter, and while there, hired men to go with him to the mines, which were in the state of Nevada, and for more than six months thereafter he was in charge of the affairs of the mining company either at the mines or at Sacramento.' The court says: 'There was nothing disclosed by the evidence to indicate that the defendant experienced any difficulty or delay in obtaining payment of

the check. The facts concerning the payment of the money were all elicited upon the examination in chief of the two witnesses. There was no cross-examination on that subject, nor any attempt, at any stage of the case, to show that the check had not been paid in the usual course of business. Under the circumstances the jury were justified in construing the testimony of the prosecuting witness and her sister to mean that the money called for by the check had actually been paid.' While we think that this case is decisive of the question here, we call attention to another case where the charge was obtaining money by false pretenses and the check was drawn bearing a general indorsement the same as in the instant case, and the court says: 'Before passing this phase of the case it might be well to call attention to the fact that the check bears a general indorsement, and there is nothing in the record inconsistent with the fact that it was paid in due course. The least that can be said, under the circumstances, is that the prosecution made out a *prima facie* case, and assuming, without deciding, that the defendant might properly make out a defense by showing that the maker was ultimately relieved from payment, the burden to do so after the *prima facie* showing on the part of the prosecution, was cast upon him, and not having done this, he cannot now complain.' (*People* v. *Steffner*, 67 Cal. App. 1–11 [227 Pac. 690].) No claim was made by the appellant here that he did not receive the money upon the check and for the reasons stated he cannot be heard to complain. Also, in the case of *People* v. *Hutchings*, 56 Cal. App. 397 [205 Pac. 480], it was held that proof of receipt of check sufficiently supports the charge of obtaining money in the absence of evidence that the check was not cashed.

[15] "Counsel argues that there is no causal connection between the false pretenses and the obtaining by defendant of the money and property of complaining witnesses. What has been said heretofore with respect to the immediate organization of the proposed corporation is applicable at this juncture. Furthermore, we think that the case of *People* v. *White*, 7 Cal. App. 99 [93 Pac. 683], is not at all in point for the reason that there is a connection alleged and proved in this case. There was a natural connection between the pretenses and the parting with their money and

property by the complaining witnesses. Industrial corporations of the character contemplated in the scheme of the defendant owe their success or failure in many instances to the character, integrity and genius of the men composing the organization and to their ability to finance the organization with large sums of money, such as was proposed here. There can be no doubt that the representations here made were the inducing cause of the investment the complaining witnesses supposed they were making.

[16] ''The last argument advanced by appellant, that the subscription agreement, having recited that the moneys were paid to the defendant as trustee, that there is a fatal variance between the proof and the allegation that the defendant obtained the money and property is fully answered by the cases of *People* v. *Bryant,* 119 Cal. 595 [51 Pac. 960], and *People* v. *Griesheimer, supra,* in which last case this language is used: 'The crime charged against this defendant was complete upon his obtaining the money from Muck by false and fraudulent representations, and it was not necessary to show what defendant did with it.' Also, in the case of *State* v. *Balliet,* 63 Kan. 707 [66 Pac. 1005], quoting from an Indiana case: ' ''The law does not make it an element of the offense of obtaining money or property under false pretenses that it shall be obtained for the person making the pretenses himself, or that he shall be intended to obtain it for another; for it is provided that 'whoever shall obtain money or property' by false pretenses shall be guilty of a felony.'' ' ''

The judgment and order appealed from are affirmed.

Richards, J., Shenk, J., Waste, C. J., Curtis, J., Langdon, J., and Preston, J., concurred.