[Crim. No. 172.   Fourth Appellate District.—November 19, 1934.]

THE PEOPLE, Appellant, v. BERT BRUNWIN et al.,
Respondents.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Thos. Scott, District Attorney, Norman E. Main, Deputy District Attorney, and F. E. Borton for Appellant.

Hyman Schwartz and J. R. Dorsey for Respondents.

JENNINGS, J.—The People appeal from an order of the Superior Court of Kern County sustaining the demurrer interposed by the defendants to an amended indictment and providing that the defendants be discharged and their bail exonerated.

The amended indictment contains six counts. In three of these counts the defendants are charged with having conspired to commit the crime of grand theft. In the remaining three counts the defendants are charged with having committed the offense of grand theft.

Examination of the record and of the briefs filed by counsel herein indicates that the same legal problems appertain to each count of the indictment. It may be conceded that, if the trial court was correct in sustaining the demurrer to any single count, its action in sustaining the demurrer to all counts and in ordering the discharge of the defendants was correct and must be upheld on this appeal.

For the purpose of illustrating the problems which are here presented the fourth count of the indictment has been selected. Omitting the legal description of the land affected, it is in the following language:

"That on or about the 5th day of December, 1933, Pacific Western Oil Company, a corporation, was the owner and holder and in possession of the sole and exclusive right to drill for, produce, extract, and take petroleum oil from the following described lands, real estate and realty in the County of Kern, State of California, to-wit: . . . and was then and there in the sole and exclusive possession of and entitled to the possession of said land, real estate

and realty for the purpose of drilling, producing, extracting and taking therefrom such crude petroleum oil, and was then and there the owner and in possession of all crude petroleum oil in, on and within said lands, real estate and realty, and that said crude petroleum oil was then and there a part of said lands, real estate and realty.

"That at said time said Pacific Western Oil Company had discovered in and was then and there producing and engaged in producing said crude petroleum oil on and from said lands, real estate and realty. That on or about said 5th day of December, 1933, the said Bert Brunwin, Abe Bernstein, and Sam Bernstein, against the will and without the consent of said Pacific Western Oil Company, and wilfully, intentionally, unlawfully, and feloniously, did enter in, into, on, and upon said lands, real estate and realty of said Pacific Western Oil Company, and convert certain manner of real estate, to-wit: 1004 barrels of said crude petroleum oil of the value of $572.28, lawful money of the United States, into personal property by severing the same from said lands, real estate and realty with felonious intent to and did so sever from said lands, real estate and realty and steal, take and carry away said crude petroleum oil, contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the People of the State of California."

The ground of demurrer to this pleading which was sustained by the trial court was that the facts which are therein stated do not constitute a public offense.

The chief contention of the defendants in their attack upon the aforesaid count of the indictment which evidently prevailed in the trial court and which forms their principal contention for affirmance of the court's order is that the pleading shows on its face that the property alleged to have been taken and converted was oil which at the time of taking formed part of the realty from which it was removed and that the offense of larceny of realty is unknown to the law.

Appellant relies upon two California statutes to support its contention that the pleading is sufficient and that the court's action in sustaining the general demurrer of respondents was erroneous.

These statutes are section 495 of the Penal Code and section 1 of Act 4194 of the General Laws, 1931. The former of these statutes is in the following language: "Severing and removing part of the realty declared larceny. The provisions of this chapter apply where the thing taken is any fixture or part of the realty, and is severed at the time of the taking, in the same manner as if the thing had been severed by another person at some previous time."

The latter statute is as follows:

"Grand larceny. Every person who shall convert any manner of real estate of the value of fifty dollars and upwards into personal property, by severing the same from the realty of another, with felonious intent to and shall so steal, take, and carry away ·the same, shall be deemed guilty of grand larceny, and upon conviction thereof shall be punishable by imprisonment in the state prison for any term not less than one year nor more than fourteen years."

Section 495 of the Penal Code is found in chapter V of title XIII of part I of the code. Part I is entitled "Crimes and Punishments". Title XIII bears the title "Crimes against Property". Chapter V is entitled "Larceny [Theft]".

The plain meaning of the language employed in section 495 would appear to indicate a clear legislative intent to denounce as a crime the unlawful taking of anything which forms a part of the realty and which is severed from the realty at the time of taking. As above noted, respondents contend that oil in place in the ground forms a part of the realty. Obviously, oil which has been removed from the ground is personal property and the unlawful taking thereof would constitute larceny just as would the unlawful taking of any other form of personalty.

Respondents urge that by the use of the language "Where the thing taken is any fixture or part of the realty" the legislature intended to extend the definition of larceny to include the unlawful taking of fixtures or articles similar to fixtures. To accomplish this result they supply an adjective to qualify the noun "Part" in the first sentence of the above-quoted statute. The adjective which they would thus supply is the word "other". It may be conceded that if the limiting adjective "other" appeared so that the language were "Where the thing taken is any

fixture or other part of the realty'' it might well be· argued
that the legislature intended to go no further than to
denounce the unlawful taking of fixtures and such articles
as are like or similar to fixtures. However, the word
''other'' does not occur in the statute and its interposition
is unjustified. The nouns ''fixture'' and ''part'' are sepa-
rated and distinguished by the disjunctive ''or'' without
the use of any qualifying or limiting adjective preceding
and modifying the latter noun. We think that the language
is clear and that the suggestion of respondents would
involve an unnecessarily strained construction of its plain
and obvious meaning.

However, if the contention of respondents as to the
proper meaning of the language of section 495 of the Penal
Code be sustained, we can find no reason to doubt that by
the enactment of Act 4194 of the General Laws the legisla-
ture evidenced an unmistakable intention to denounce the
conversion of real estate into personal property by severance
from the soil as larceny. The language which is here em-
ployed is too plain to admit of doubt. It may be remarked
in passing that the language of that count of the indict-
ment here under consideration indicates most strongly
that the pleader obviously intended to frame the pleading
in conformity with the provisions of this statute. In this
we think he was successful and unless there is some good
reason why petroleum oil should have a different status
from other substances which form a part of the land so that
it must be declared that as to oil a different rule prevails
and the unlawful taking of it cannot, because of its nature,
be regarded as coming within the broad inhibition of the
latter statute, we must conclude that the trial court erred
in holding that the unlawful taking of oil in place in the
land and its severance from the land does not constitute
larceny.

Respondents rely on the decision in *People* v. *Williams,* 35
Cal. 671. This case was decided in 1868. . In it the defend-
ant was charged in an indictment with having taken and
stolen from a certain named corporation fifty-two pounds of
gold-bearing quartz rock. He was convicted of the crime of
grand larceny and thereupon moved the trial court to arrest
the judgment on the ground that the indictment was in-
sufficient. The motion prevailed and the People appealed

from the court's order arresting judgment. The order was affirmed on the ground that the indictment was fatally uncertain in that it did not sufficiently allege that the rock was personal property and not a part of the realty. The ground of the decision was that an injury to real estate was not indictable at common law, that it was therefore not larceny to steal anything which adhered to the soil, and that the legislature had passed no statute denouncing as larceny the stealing of anything which adhered to the soil and formed a part of it. In the final sentence of its opinion the court deprecated the necessity of applying the common law rule and stated that it adverted to the question "mainly for the purpose of directing the attention of the Legislature to a subject which appears to demand a remedial statute".

In 1872 the legislature of California enacted three statutes which materially relaxed the rigidity of the common law rule which, in effect, provided that realty could not be the subject of larceny. Two of these statutes, section 495 of the Penal Code and Act 4194, have already received attention. Section 495 of the Penal Code was enacted on February 14, 1872, and Act 4194 was approved on March 6, 1872. The third statute is Act 4195 of the General Laws, approved on March 20, 1872. This last-mentioned statute provides that "Every person who shall feloniously steal, take, and carry away, or attempt to take, steal, and carry from any mining claim, tunnel, sluice, undercurrent, riffle-box, or sulphurate [sulphuret-] machine any gold-dust, amalgam, or quicksilver, the property of another, shall be deemed guilty of grand larceny, . . . " It is our opinion that section 495 of the Penal Code and Act 4194 are *in pari materia* and that both laws denounce the unlawful taking of realty as larceny. It is also our opinion, as heretofore indicated, that if it may be assumed that the former statute was restricted in scope to the taking of fixtures or of some other article or thing affixed to realty like fixtures, the latter statute is not subject to so narrow an interpretation and provides a comprehensive denouncement of the severance of realty as larceny. Act 4195 is by its very terms limited in its operation to the felonious taking of gold dust, amalgam or quicksilver from mining claims, etc.

In *People* v. *Opie,* 123 Cal. 294 [55 Pac. 989], the defendant was charged in an information with stealing gold ore. The pleading was in the usual form whereby grand larceny was charged and it was objected that it was fatally defective. The Supreme Court stated that under the authority of *People* v. *Williams, supra,* the contention would have weight but that the legislature with a view to modifying the law as there declared had enacted Act 4194 whereby the stealing of gold ore, whether severed from the earth or not by the party charged, was made a crime.

Respondents place much reliance upon *People* v. *Cummings,* 114 Cal. 437 [46 Pac. 284], as an authority supporting their contention that the various statutes to which consideration has heretofore been given are restricted in their operation and that there is not to be found in the laws of this state any statute which covers the stealing of oil which it is contended forms a part of the realty and that therefore the trial court's action in sustaining the demurrer to the amended indictment was proper and must be upheld. In this case, the defendant was accused of the crime of obtaining two parcels of land by false pretenses. A general demurrer to the information was sustained and on appeal by the People the trial court's order was affirmed. The basis of the opinion was that section 532 of the Penal Code, under which the information was drawn, did not include a case wherein one was charged with defrauding another of real estate. In its opinion the court declared that the offense of false pretenses under the English statutes had always been construed as largely analogous to and closely bordering upon that of larceny, and as having application only to personal property which was capable of manual delivery and which could be the subject of the offense of larceny and that realty which was incapable of larcenous asportation was not regarded as requiring from the criminal law the same protection as personalty. At the time this case was decided section 532 of the Penal Code provided that "every person who . . . defrauds any other person of money or property . . . is punishable in the same manner and to the same extent as for larceny of the money or property so obtained". It must be conceded that the reasoning of the case which, in the final analysis, rests upon the proposition that realty cannot be the subject of larceny

is favorable to the contention of respondents. The case was decided in 1896 and section 495 and Act 4194 had then been on the statute books for twenty-four years. Nevertheless no reference was made to these statutes in the opinion and its seems to have been assumed that in California realty could not be the subject of larceny.

In 1905 the legislature amended section 532 of the Penal Code and enlarged its scope to include the defrauding by one person of any other person "of money, labor or property, *whether real or personal*" (italics ours). Notwithstanding the amendment, it was held in *People* v. *Folcey,* 78 Cal. App. 62 [247 Pac. 916], decided in 1926, that section 532 of the Penal Code fails to provide that it is a crime to obtain real property by fraudulent pretense in that the only portion of the section which provides for any punishment for a violation of the statute provides that the punishment shall be "in the same manner and to the same extent as for larceny of the money or property so obtained". The opinion further stated that "the only definition of larceny contained in our codes is that contained in the Penal Code, sections 484, 485, 486, 487, 488, 502½, 538, and in General Laws, Deering's 1923 Edition, Acts 4195, 4194, and 5233 (sec. 64, subd. 29), all of which are limited to personal property". In view of this statement it must be conceded that *People* v. *Folcey, supra,* is authority for the contention of respondents. However, as was pointed out in *People* v. *Rabe,* 202 Cal. 409, at page 419 [261 Pac. 303]: "We are not bound to accept the language" of *People* v. *Folcey, supra,* "as precedent" although it is true that a petition for a hearing of the case in the Supreme Court was denied. In *People* v. *Maddux,* 102 Cal. App. 169 [282 Pac. 996], the defendant had been convicted of the crime of grand theft. From the context of the opinion it is apparent that the only evidence which was adduced during the trial tending to prove that he had committed the offense of which he was convicted showed that he had obtained real property by means of false pretenses. On appeal the defendant contended that real property cannot be the subject of larceny and therefore cannot be the subject of obtaining property under false pretenses. In support of the contention thus advanced he relied on *People* v. *Cummings, supra,* and *People* v. *Folcey, supra.* The contention did not prevail. The appel-

late court remarked that the cited cases stated a doctrine which, if it still obtained, might lend support to the defendant's contention but that unhappily for him, the doctrine was highly technical and unsatisfactory and so far as the case then before the court was concerned had been modified if not entirely repudiated by the Supreme Court in *People* v. *Rabe, supra.* In view of the stricture upon the language used in the decision in *People* v. *Folcey, supra,* as announced in *People* v. *Rabe, supra,* and in view of the pronouncement in *People* v. *Maddux, supra,* that *People* v. *Folcey, supra,* states a doctrine which has been modified if not repudiated, a close examination and analysis of the decision in *People* v. *Folcey, supra,* is warranted. It is immediately obvious that exactly what was there decided was that section 532 of the Penal Code fails to provide that it is a crime to obtain real property by fraudulent representation or pretense and that the amendment of the statute by the legislature in 1905, which amendment consisted merely of the insertion of the words "whether real or personal" had no effect, so far as real property is concerned, since the only part of the statute which provided any penalty for its violation remained unamended as follows: "is punishable in the same manner . . . as for larceny of the money or property so obtained". The very general statement contained in the opinion that "the only definition of larceny contained in our codes is that contained in the Penal Code, sections 484, 485, 486, 487, 488, 502½, 538, and in General Laws, Deering's 1923 Edition, Acts 4195, 4194, and 5233 (sec. 64, subd. 29) all of which are limited to personal property" was not necessary to the decision and is therefore *dictum.* Furthermore, in view of the plain language of Act 4194 we are forced to the conclusion that the statement is not strictly correct. In considering the language of Act 4194, having particularly in mind its comprehensiveness, the following language from *People* v. *Roland,* 134 Cal. App. 675, 681 [26 Pac. (2d) 517, 519], is apropos: "The point is that although in defining theft the statute may not expressly denounce particular varieties of felonious acts which may result in defrauding one of real property, nevertheless, without such particularization, the language of the statute may be so broad or general in its nature that real property may be the subject of the offense." The lan-

guage of Act 4194 is most comprehensive and its meaning is clear. We can arrive at no other conclusion than that by this statute the legislature has unmistakably manifested its intention to make real property the subject of larceny and that the act does denounce the conversion of real property, by severance with the intention of stealing it, as larceny.

In support of the trial court's action in sustaining the demurrer to the amended indictment, respondents further contend that the oil in the ground was the property of the owner of the land and not of the lessee who merely had the right to prospect and to drill therefor and that the lessee had no property right in the oil until it was captured and brought to the surface. It is further urged that the indictment is fatally defective in that it fails to allege that the complainant lessee has any rights in and to the strata from which it is charged the oil was taken and severed by respondents.

In this connection it must be observed that the amended indictment alleges that on a specified date the complainant was the owner and holder and in possession of the sole and exclusive right to drill for, produce, extract, and take petroleum oil from certain described land in Kern County and that it was then and there in the sole and exclusive possession of the land for the purpose of drilling for and producing and extracting therefrom such oil and that it was the owner and in possession of all oil in the land and that such oil was a part of the land, that at such time the complainant was producing oil from the land, that on the date specified the respondents, against the will and without the consent of complainant, wilfully, unlawfully and feloniously entered upon the land and converted a certain manner of the realty consisting of a specified number of barrels of oil having a value of $572.28 into personal property by severing such oil from the realty with the felonious intent to sever the same and that they did sever from the land and steal, take and carry away the oil.

It is our conclusion that the amended indictment is not subject to the objection thus presented by the respondents. The pleading clearly alleges the felonious taking of certain property which was owned by complainant. Whether the

complainant actually owned the oil at the time of taking or whether it was merely in possession of the land of which the oil formed a part with the right to drill for and extract the oil is a matter of indifference so far as this case is concerned. ■ It is an essential element of the crime of larceny that the thing which is taken and carried away shall be the property of another (18 Am. & Eng. Ency. of Law, 2d ed., p. 498). But the exact status of the legal title to the property need not be meticulously alleged in the pleading which charges the commission of the offense. "Considered as an element of larceny, 'ownership' and 'possession' may be regarded as synonymous terms; for one who has the right of possession as against the thief is, so far as the latter is concerned, the owner." (*People* v. *Edwards,* 72 Cal. App. 102, 116 [236 Pac. 944, 950].) It is, after all, a matter of no concern to a thief that legal title to the stolen property is not in the complainant. (*People* v. *Edwards, supra.*) It is essential that the pleading which charges the commission of the crime of larceny shall contain an averment that the property which is the subject of the offense is not the property of the defendant. (*People* v. *Nunley,* 142 Cal. 105 [75 Pac. 676]; *People* v. *Sing,* 42 Cal. App. 385, 395 [183 Pac. 865].) "Possession alone, as against the wrongdoer, is a sufficient interest to justify an allegation and proof of ownership in a prosecution for larceny." (*People* v. *Kirsch,* 204 Cal. 599, 602 [269 Pac. 447, 449].)

■ We think that no useful purpose will be here served by indulging in an extended analysis of the exact legal status of crude oil in place. Whether, by reason of its fugitive and migratory character, the owner of the land has merely a qualified ownership or a potential ownership in the oil or whether his right is something less and may more properly be described as potential possession is of slight consequence here. It appears to be settled in this state that a lessee under an oil and gas lease acquires no title to the oil and gas in place as part of the realty. (*Western Oil etc. Co.* v. *Venago Oil Corp.,* 218 Cal. 733, 738 [24 Pac. (2d) 971, 88 A. L. R. 1271].) Nevertheless, the last-cited case holds that such a lessee has the right to enter upon the leased land, drill wells and reduce the oil and gas to possession and that such right is sufficient under the doctrine of

potential possession to accomplish a valid transfer *in praesenti* of a fractional interest in the oil and gas in place and not yet captured and reduced to actual possession. If, under the rule announced in this decision, a lessee of land having the right to drill for and reduce to possession oil in the ground, has such a title to the oil in place that he can sell and transfer it and the transfer becomes immediately effective, no good reason is apparent why the right conferred upon him by the lease is not such that he is entitled to complain when a trespasser enters upon the leased premises and severs from the realty the very thing which is the real subject of the lease. In *Bartholomae Oil Corp.* v. *Delaney*, 112 Cal. App. 314 [296 Pac. 690], it was decided that the lessee of land under a lease which gave such lessee the exclusive right to drill, develop and remove petroleum from the ground may maintain an action to quiet title to the leasehold interest and to the oil in place. In *Mexican Gulf Oil Co.* v. *Compana Trans. D. P. S. A.*, 281 Fed. 148, 163, the plaintiff sought to recover damages from the defendant for the taking of 6,000,000 barrels of oil from certain land in Mexico upon which the plaintiff claimed to have an exclusive right to drill for oil. The plaintiff was given judgment for the value of the oil taken. Certain language in the opinion bearing upon the question of the ownership of the oil in place is apropos to the problem which is being here considered. The court said: ''The argument of the defendant is that oil being a fugacious element is not owned by any one until it is brought to the surface; the owner of the land does not own it if he has given the exclusive right to explore to another; that other cannot recover if he was not in possession of it. Such a result seems to me so unjust as to make the reasoning which leads to it wrong.''

Numerous additional authorities have been cited by appellant, wherein the courts have discussed the nature of the right to oil in place which is vested in the owner of the realty. Whether this right is properly characterized as a ''qualified ownership'' or ''potential ownership'' or ''ownership subject to defeasance'' or ''potential possession'' is not here a matter of very great importance. It must, we think, be granted that it is a right which deserves the protection of the law in its enforcement. It is here conceded that the complainant is the lessee of the land having the exclusive

right to drill for, produce, extract, and take from the land crude oil which may be there discovered. This is sufficient to place the complainant in possession of whatever rights to the oil in place as were held by the owner of the leased premises and to entitle the lessee to complain of the unauthorized invasion of such rights by respondents who are alleged to have trespassed upon the land and to have feloniously severed and taken the oil from the realty.

In conclusion, it should be remarked that we have here considered the contention of respondents that oil in place in the·ground forms a part of the realty and that, in accordance with the common law rule, it may not be the subject of larceny, and have indicated our opinion that this contention is not sustainable because of the presence in the statutes of California of certain laws which have relaxed the rigidity of the common law rule. Concededly, if oil in place may properly be regarded as personal property rather than realty the contention of respondents in this regard must fail if the amended indictment is sufficient to charge a larceny of personalty. Examination of the pleading warrants the conclusion that it is entirely sufficient to charge a larceny of personal property so that whether the article alleged to have been taken was realty or personalty the action of the trial court in sustaining the general demurrer of respondents was, in our view, erroneous.

For the reasons herein stated the order from which this appeal has been taken is reversed, the cause is remanded and the trial court is ordered to overrule the demurrer to the amended indictment.

Barnard, P. J., and Marks, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 17, 1934.

Preston, J., voted for a hearing.