[Crim. No. 1730. Second Appellate District, Division Two.—February 7, 1929.]

THE PEOPLE, Respondent, v. GEORGE J. McCANN, Appellant.

Arthur Brigham Rose for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellant was charged by information consisting of five counts with having committed grand theft, in that on the following dates he did unlawfully take from the Pacific States Savings and Loan Company, a corporation, the respective sums of money specified, that is to say: August 15, 1927, $300; August 27, 1927, $500; April 11, 1928, $500; October 10, 1927, $250, and October 17, 1927, $306.48. He was convicted upon each count, whereupon he moved for a new trial, which was denied, and he appeals from the judgments and from the ruling of the trial court upon said motion.

It appears that McCann was bookkeeper and cashier of the company mentioned, and that it was his duty in that

capacity to make entries in the books of his employer of moneys received and disbursed, and to write checks which he presented to the vice-president for signature. It was customary for the company to carry daily about $350 in petty cash, and at the end of the day the cashier prepared a check for an amount necessary to balance the petty cash account, presented it to the proper officer for signature and charged portions thereof to various accounts. Each count of the information is founded upon an alleged shortage of funds, and the method which the People contended appellant pursued in stealing moneys of his employer being similar upon all five occasions, it is sufficient for the purposes of this appeal to detail the facts presented to the trial court and jury as to one of the counts.

On August 27, 1927, appellant made a check to balance petty cash, numbered 3828, for the sum of $650.86, which he entered in the cash-book, and charged to the following accounts: Installments six per cent account, $520; exchange, $101.86; F. P. coupons, $29. This check was posted to the account of Brent M. Martin, whose certificate was number 114, in the record of individual accounts, whereas the only charge entered against that account consisted of $20, which appeared to have been withdrawn on August 16, 1927. None of the balance of said check was charged against any other individual account, and the rest of the $500 was not accounted for. The vice-president, and the assistant secretary, each testified to the method of business, system of bookkeeping, duties of appellant, and shortages; a certified public accountant who audited the books also verified the entries and deficiencies. It was stipulated that McCann indorsed check No. 3815, and a handwriting expert swore that in his opinion all of the entries were made by the same person who wrote the indorsement. The assistant secretary and the vice-president both identified the handwriting, and the latter testified to having signed the checks at the instance of the defendant, who represented them to be for balancing petty cash account. When arrested he admitted to one officer that his accounts were short $8,000. One of the officers testified upon cross-examination by the defendant's attorney that McCann stated that he did not know why he had taken the money, that it was "just wild ideas," and that he "wished he could get a chance to work for the Pacific States

Savings and Loan Company for one year without pay; if he could do that he could square himself up.''

It is strenuously insisted by appellant that since he was admittedly bookkeeper and cashier, and the moneys represented by the various checks lawfully came into his possession, he was not guilty of theft if he used or misapplied them, and that in any event since there was an alleged shortage of $5,000 or $8,000, it constituted but one offense, which was improperly split into five separate causes of action, or counts.

Section 484 of the Penal Code expressly provides that: ''Every person . . . who shall fraudulently appropriate property which has been entrusted to him, . . . is guilty of theft.'' The trial court instructed the jury in the foregoing language, and also that if one who assumes to act in the capacity of agent or servant of another, ''is intrusted with and receives into his care and custody property, for the use of another person, and fraudulently appropriates such property to his own use or to any use or purpose not in the due and lawful execution of his trust, is guilty of theft.'' Appellant was convicted upon an abundance of evidence, a portion of which we have pointed out, including his own admissions, which tended to show that assuming to be the agent of the Pacific States Savings and Loan Company, he was entrusted with and received into his care and custody certain of its personal property, for the use of the latter, upon five different occasions, which he applied to none of his employer's accounts and did not have on hand at the time of the audit. We think this clearly constituted theft as defined by the Penal Code, and that the argument that one amount taken in April, two upon different dates in August, and two on the 10th and 17th of October, 1927, should have been charged as one offense does not require extended discussion nor citation of authority. The thefts were obviously separate and distinct offenses.

It is next contended that the *corpus delicti* was not established, and that the evidence tending to connect appellant with the commission of the crimes was wholly insufficient to warrant or sustain a conviction. The defendant did not testify, nor did he in any manner attempt to trace into the hands of any other person the moneys which according to his own entries were entrusted to him, and which were

withdrawn by means of checks which he does not deny having indorsed. Authorities cited by appellant fail to support his contentions. In many instances they exhibit an absence of proof of the *corpus delicti,* or of the guilt of the defendant without his confession. However, in *People* v. *Roganovich,* 77 Cal. App. 158 [246 Pac. 132], it was said:

"But it does not follow that where there has been received evidence of substantial weight, tending to prove the *corpus delicti,* a confession made by the defendant may not be used by the jury as cumulative evidence further tending to establish the fact of the *corpus delicti,* as well as to prove the fact that the defendant committed the crime."

Appellant's statements to the officers did not legally amount to a "confession." They consisted of admissions which the jury may or may not have deemed of major importance in arriving at their verdicts. There was much substantial evidence both of the *corpus delicti,* and of the guilty connection of appellant with the offense charged, independent of such statements.

It is unnecessary to discuss at length appellant's contention that intent to commit a public offense was not proved. The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. (Pen. Code, sec. 21.) These elements of proof are embraced in the record.

Objections were interposed to the introduction of certain exhibits numbered 6 and 7 on behalf of the People. The first was a book containing entries made by the defendant, and the latter consisted of the expert accountant's statement of entries extracted from the books in the presence of the accused, under his direction, showing shortages about which the auditor testified, and which he marked "doubtful," at the defendant's suggestion. The witness testified as to McCann's explanation of the items embraced therein, and it was at least evidence of the defendant's voluntary statements regarding his defalcations. In any event, his counsel removes the possibility of its prejudicial effect upon the jury, as it is said that the jurors did not see either of the exhibits mentioned.

Many other rulings of the trial court and admonitions of counsel have been carefully reviewed. We do not think

they manifested bias on the part of the judge, or that they were such as to impress the jurors unfavorably to appellant in the impartial consideration of the defendant's cause. This conclusion equally applies to the complaint that no instructions were given on behalf of the defendant. No instructions were offered by the defendant, but we think those given were sufficiently comprehensive to inform the jury as to the law of the case.

The remaining assignments consist of asserted prejudicial remarks of the district attorney. However, no attempt is made to indicate why the parts of the argument to which reference is made are objectionable or in what respect they could have injured the defendant's cause. In our examination of the record we have found no statements of the prosecutor which appear to us as having been capable of prejudicing his rights.

Our perusal of the whole record has not disclosed evidence of a miscarriage of justice, although in considering the points raised in appellant's briefs we have carefully scrutinized the record in its entirety.

The judgment and order denying a new trial are affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 21, 1929.