[Crim. No. 2317. Second Appellate District, Division One.—June 14, 1933.]

THE PEOPLE, Respondent, v. MELVILLE G. HENRY, Appellant.

Catherine A. McKenna and J. Irving McKenna for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

HENDERSON, J., *pro tem.*—The defendant was charged by an indictment of fifteen counts, each of which charged him with the offense of grand theft of various moneys, stocks and securities of Frances Graham Rice. The different times at which the property was taken were from January 2, 1931, to the seventeenth day of October, 1931, and the total amounts alleged in the several counts aggregated $11,500. He was found guilty by a jury upon eight of the counts and acquitted as to the others by direction of the trial court.

In brief, the testimony discloses that Frances Graham Rice was a woman of the age of ninety-four years, penurious, impaired in vision to the extent that she could with difficulty read large print and write her name, suffering with senile dementia, and incompetent to transact the ordinary affairs of life. Owing to her physical and mental condition, it was necessary for her to live under the supervision and care of a nurse. She appeared to be growing progressively worse, and appellant first learned of Mrs. Rice from her nephew, who expressed the fear that guardianship proceedings would have to be instituted which might result in her being committed to some sanitarium or other institution. Professing a Christian interest in her affairs and at the same time expressing disapproval of the appointment of a guardian for Mrs. Rice on the ground that it would unnecessarily wound her feelings, defendant offered, in the event that she and her relatives were willing, to assume the control and management of her affairs. By a fantastic tale regarding his recollection of both Mrs. Rice and her deceased husband when he was a boy in New York, together with the false representation that he was a man of sufficient wealth and leisure to enable him to devote his time and attention to her affairs, he was able to obtain both her consent and that of her relatives to such an arrangement.

Appellant obtained Mrs. Rice's power of attorney on December 22, 1930, and assumed complete charge of her affairs. On the 2d of January, 1931, he dictated a letter, without the knowledge of her relatives, by the terms of which Mrs. Rice promised to assign all of her property to him in consideration of his association and companionship and his agreement to care for her during the remainder of her life. Defendant accepted the proposal by a letter simultaneously written, and removed Mrs. Rice from the home of her nurse to that of a Mrs. Wells, whom he subsequently married. The assignment of the stocks was thereafter executed by Mrs. Rice. The defendant withdrew and placed in his own name the moneys from her bank accounts, which he used, together with her stocks, at the times mentioned in the indictments in business ventures of his own, which for the most part were highly speculative and unfortunate. On October 26, 1931, defendant dictated another letter whereby Mrs. Rice ratified and reaffirmed her past

agreements and assigned and delivered to him her annuity check "with no terms or conditions attached thereto". The record discloses that appellant neither failed nor refused to maintain and supervise a home for Mrs. Rice until she was removed from his control by process of the court. It was the theory of the prosecution that the defendant had fraudulently appropriated the property of an incompetent person, while the defendant claimed title to the same by reason of the alleged contractual relationship. ■ The evidence is conflicting, yet there is substantial testimony of both lay and medical witnesses that Mrs. Rice was incompetent to transact her business affairs, together with ample proof that defendant had knowledge of her mental condition. Upon these questions of fact the verdict of the jury is conclusive. (8 Cal. Jur. 587.)

■ Appellant's challenge to the sufficiency of the testimony to constitute grand theft, as defined by section 484 of the Penal Code, is without merit. The test of whether the testimony satisfies the section depends upon the presence or absence of good faith on the part of the defendant in appropriating the property. It is fundamental that if property is taken by one in good faith under his claim of title in himself, he is exempt from prosecution " . . . 'however puerile or mistaken the claim may in fact be.' " It is equally true " . . . 'if the claim is dishonest—a mere pretense—it will not protect the taker.' " (*Dean* v. *State*, 41 Fla. 291 [26 So. 638, 79 Am. St. Rep. 186].) To the same effect is *Burke* v. *Watts*, 188 Cal. 118, 125 [204 Pac. 578].

The good faith of accused persons in relationship with incompetents has received, however, some attention from other courts. In the case of *Hobbs* v. *People*, 183 Ill. 336 [55 N. E. 692], an imbecile widow, not having sufficient mental capacity to attend to the most ordinary business affairs, was allowed a pension by the government. The defendant, not a licensed attorney, representing that he would attend to her legal business which he maintained required the appointment of a guardian, induced her to sign an order directing the pension agent to turn over her check to him, which she had previously indorsed. He gave a receipt therefor reciting that it was to be cashed by him, after which he would deduct his fees and pay her the balance. Defendant performed no legal services and con-

verted the money to his own use, after which he was convicted of embezzlement. The court, in affirming the judgment, said in part as follows: "The seventh instruction told the jury, in substance, that, if Mrs. Throater was a demented or distracted person, of unsound mind and memory, and not capable of transacting the ordinary business of life, and defendant knew it, it was not material whether she parted with the check willingly or unwillingly." To the same effect is *Rex* v. *Wallace*, 24 Dom. Law Rep. 825.

There was ample evidence of the defendant's knowledge that Mrs. Rice was of unsound mind and incapable of performing the ordinary business affairs of life and of his lack of good faith throughout the entire transaction, to support the judgments.

Appellant next claims that he was prejudiced by a denial of the right of reasonable examination of prospective jurors. During the selection of the jury, the trial judge examined them collectively, propounding the usual inquiries, including whether they were qualified jurors residing in Los Angeles County or had heard anything about the facts of the case from any source. The court then refused defendant's counsel the privilege of separately interrogating each prospective juror upon his particular place of residence, or whether he would be willing to be tried for a similar offense by a person of his frame of mind, on the ground of their immateriality. While answers to these questions might well have been permitted, their refusal did not constitute prejudicial error. Such special questions, which the trial court deemed proper and material and not covered by his collective examination, were permitted. The conduct of the trial judge falls squarely within the construction of the cases of *People* v. *Edenburg*, 88 Cal. App. 558 [263 Pac. 857], and *People* v. *Riordan*, 79 Cal. App. 488, 496 [250 Pac. 190]; by the Supreme Court of California in the case of *People* v. *Estorga*, 206 Cal. 81, 85 [273 Pac. 575, 576], as follows: "In those cases the jurors who were examined collectively by the court appear to have been those who had been drawn and seated in the jury-box in the customary manner, were thus reduced to twelve in number, and had thereby become more definitely prospective jurors for the case on trial. This court, however, is not prepared to criticise a collective examination by the trial court of

jurors drawn and seated in the jury-box, provided the examination be of such a nature, and conducted in such a manner, as to sufficiently disclose the state of mind and attitude of the jurors toward the cause and the parties involved, and that opportunity for a 'reasonable examination' of the prospective jurors be accorded the People and the defense, on its being made to appear to the satisfaction of the court that such further examination is both 'reasonable' and proper. We commend to the trial courts, however, a consideration of some of the observations made by the district courts of appeal on this subject."

■ Appellant further assails the court's "sarcastic and disparaging remarks imputing bad faith" directed toward his counsel while interrogating the prospective jurors Jeffrey and Wheeling, neither of whom was retained to try the cause. This statement was the outgrowth of a question to the court with reference to the limitation of the examination of prospective jurors on matters which were deemed by him to be immaterial. No assignment of misconduct to the court's remarks was made. Under such circumstances ordinarily the alleged impropriety will not be considered on appeal. (*People* v. *MacDonald,* 167 Cal. 545, 551 [140 Pac. 256] ; *People* v. *Nakis,* 184 Cal. 105, 116 [193 Pac. 92].)

■ The appellant next assigns misconduct on the part of the jury and complains that the court failed to heed the affidavits of Mrs. Henry, wife of the defendant, and one Jennie Adams Conrad, charging that certain members of the jury designated merely as jurors "6" and "7", without identifying them by name, were seen in conversation with witnesses for the prosecution during the course of the trial. As the affidavits did not disclose the names of the jurors or the nature of the conversations except that they were able to hear only the name of defendant mentioned, error cannot be predicated thereon. As was stated in *People* v. *Golsh,* 63 Cal. App. 609, 618 [219 Pac. 456, 460] : "It does not appear that the conversation related to the case on trial. It therefore is not of itself a circumstance sufficient to raise a presumption that the juror was improperly influenced. It was of course a grave impropriety, exposing a juror to suspicion and reflecting upon the administration of justice, but in the absence of any showing as to the nature of the subject matter of the conversation we cannot say that it was

legal misconduct calling for a reversal of the judgment. (*People* v. *Dunne,* 80 Cal. 34 [21 Pac. 1130]; *People* v. *Phelan,* 123 Cal. 551, 567, 568 [56 Pac. 424].)''

█ Appellant strenuously insists that there was insufficient evidence to warrant the instruction which directed the jury to render a verdict on each of the fifteen counts. It is contended that the crime, if any, was complete when the property was assigned to him and was improperly split into the separate causes of action. There was sufficient evidence, including his own admissions, which tended to show the misapplication of funds on different occasions, and the instruction was not erroneous. (*People* v. *McCann,* 96 Cal. App. 664, 667 [274 Pac. 621]; *People* v. *Hatch,* 13 Cal. App. 521, 533, 534 [109 Pac. 1097].) Objections were made to other instructions, which appear to be without merit. The instructions of the trial court fairly and comprehensively stated the rules of law applicable to the case.

A majority of the points raised in the appellant's brief were unsupported by authority, and while other objections were made in like manner for our consideration, a careful review of the entire record discloses no error prejudicial to his rights.

The judgments and order denying a new trial are affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 13, 1933.