[Crim. No. 2794. Second Appellate District, Division One.—December 7, 1935.]

THE PEOPLE, Respondent, v. HAZEL JUEHLING, Appellant.

Stanley Visel, Martin S. Ryan and Edgar T. Fee for Appellant.

U. S. Webb, Attorney-General, and Walter L. Bowers, Deputy Attorney-General, for Respondent.

HOUSER, P. J.—From each of two several judgments of conviction on as many separate charges of receiving stolen property that theretofore had been preferred against her, as well as from an order by which her motion for a new trial was denied, defendant has appealed to this court.

As developed by the evidence adduced on the trial of the action, it appears that as to count I of the information, on or about January 22, 1935, in circumstances unnecessary herein to be set forth, a watch that was contained in a lady's handbag was stolen from an automobile at a time when it was being driven by its owner; and that as to count II of the information, on or about December 17, 1934, in similar circumstances, another watch was stolen. On May 29, 1935, which was several months after the latter of the watches had been stolen, defendant was placed under arrest. At that time she was driving an automobile; and before having been taken to the police station, at her request she was taken to a certain gasoline filling station, where within the immediate presence, but outside the hearing and sight, of the arresting officer, that is to say, while the officer sat in the front seat of the automobile, and while defendant was outside the automobile and at the rear thereof, she had some conversation with the proprietor of the filling station and one of his employees, following which defendant went inside the office building of the filling station where she leaned against the jamb of one of the doorways therein, in which position she was in reach of a "pigeonhole" drawer in which the proprietor of the filling station was accustomed to file certain memoranda or invoices that related to charges which, from time to time, he had made against defendant on account of purchases made by her of gasoline from the proprietor of said filling station. On the way from the filling station to the police station, the arresting officer asked defendant what she had done with a diamond ring which he testified defendant had been wearing before she reached the filling station and which, at the time he asked the question, she was not wearing; to which query she replied that she had not been wearing any such ring. After the arrival of defendant at the police station, a search of a suitcase that was her property and which was then in the automobile, disclosed

that, among other things, it contained not only the watch that was described in count I of the Information, but also several diamond rings. On being questioned by the arresting officer as to her possession and ownership of such articles, she gave various answers, such as that she had acquired them "from different people—different places"; and that "I don't know; it doesn't matter". And with respect to the length of time that the watch and several rings had been in her possession, at first she said, "Oh, three months"; which later she changed to "Oh, ten years". On the day when the preliminary examination on the several charges against defendant was conducted, in reply to questions propounded to her with reference to a man named Benny Solis, who apparently was suspected by the police of having stolen the watches and the rings, defendant replied: "Well, I would rather not say anything about it, but . . . you are on the right track. . . . For several months I have been trying to get out of this racket, trying to get away from this boy; anybody that knows me or knows him will tell you I have avoided him for quite a little while, but I believe I got out too late, looks like I got out of the racket too late. . . . Well, Benny Solis was, (the operator of the 'gang') he was small and could get around fast"; and that she "didn't think Joe operated at all, but that Benny was the actual operator of the bunch".

On the day following the arrest of defendant, the police officers again visited the filling station, at which time and place, on examination of the "pigeonhole" drawer in which were kept the invoices or charges against defendant, as aforesaid, two diamond rings, besides the stolen watch that was described in count II of the information, were found. However, on the trial of the action, the proprietor of the filling station testified that it was he who had placed the watch in the "pigeonhole" drawer; that he had received it from his employee on the day when defendant had been arrested; and that he did not place the diamond rings in the drawer. The arresting officer identified one of the rings as the one that defendant had been wearing at the time when she was arrested and which she was not wearing after she had left the filling station. The employee of the proprietor of the filling station was not called as a witness,—it appearing that at the time of the trial he was located in the state of Washington.

The first point presented by appellant on her appeal is that the evidence was insufficient to support the judgment. In that regard, as to the first count, the fact that the watch was stolen and that afterward it was found in the possession of defendant is very clearly established; but for the purpose of proving the commission of the crime of receiving stolen property, by numerous decisions it has been held that mere possession by a defendant of a stolen article is not of itself sufficient. Indeed, in denouncing the offense of receiving stolen property in a situation such as herein is involved, the provisions of section 496 of the Penal Code include the requirement that the property must have been received "knowing the same to have been stolen". It is particularly to the element of guilty knowledge on the part of defendant in that regard that the attention of this court is directed.

The law seems well settled that although the burden is upon the prosecution, in order to prove guilty knowledge on the part of the recipient of stolen property, it is unnecessary to show his actual and positive knowledge in that respect. Of course, in returning a verdict of "guilty", a conclusion by the jury with reference to the pertinent inquiry may not rest upon conjecture or surmise; but the statutory requirement as to guilty knowledge may be met by admissible evidence from which the element of guilty knowledge properly may be inferred. (*People* v. *Mercado,* 59 Cal. App. 69, 72 [209 Pac. 1035], and authorities there cited.) In the instant case, the time that may have elapsed between the date when the property was stolen and the date when defendant was arrested constituted but a single item of evidence with reference to the question of guilty knowledge, to be considered with all the other evidence in the case for the purpose of eventually reaching a determination on that particular issue.

It is also well established that evasive answers by a defendant to material questions with reference to the ownership of stolen property, or to the manner in which defendant claims to have acquired such property, or, as is generally stated, a failure on the part of the defendant to "satisfactorily" explain his possession (*People* v. *Jacobs,* 73 Cal. App. 334, 340 [238 Pac. 770], and authorities there cited; *People* v. *Cox,* 117 Cal. App. 254, 258 [3 Pac. (2d) 581]), may be sufficient upon which to base an inference of guilty knowledge. And by a host of cognate authorities, it has been decided that

what constitutes a "satisfactory" explanation of possession of the "fruits" of a burglary or a larceny, is a question that primarily and impliedly must be answered by the jury in its verdict. But eventually in such cases, as is the situation here, the pertinent and final inquiry is whether the possession of the property by the defendant, together with other suspicious circumstances, is sufficient to support the judgment.

As to count I of the information, as hereinbefore has been set forth, in addition to her lack of frankness in some of her answers to questions, defendant not only refused to answer other questions, but as well gave an answer at one time that was contradictory to one which she gave to the same question on another occasion; she stated that she did not know where or how she acquired the property; she admitted that in seeking to solve the problem as to who had actually stolen the two watches that were the subject-matter of the investigation, the officers were "on the right track"; and that Benny Solis "was the actual operator of the bunch".

Considering the foregoing, it is concluded that guilty knowledge was clearly inferable.

As to count II of the information, the situation is somewhat different. It may be remembered not only that the watch that was involved therein was not found in the physical possession of defendant, but also that with an exception hereafter to be noted, all the incriminatory statements made by defendant occurred before that watch was located. The exception that was contained in testimony given by the arresting officer related to a conversation had between him and defendant on the day when her preliminary examination on the charge was conducted, and was as hereinbefore has been indicated.

Considering the question of possession of the watch that was described in count II of the information, the facts that immediately after having been arrested, defendant requested that she be taken to the filling station; that while there, without the immediate presence or the hearing of the arresting officer, defendant had the opportunity to place the watch in the possession of the employee; that thereafter and on the same day, the employee gave the watch to the proprietor, who thereupon placed it in the "pigeonhole" drawer, to which reference hereinbefore has been had; and that on the

day next thereafter a diamond ring that defendant had been wearing at the time when she was arrested was found in the same drawer,—defendant personally having had opportunity to place the ring there—we think furnish sufficient foundation for the necessary inference of possession. Likewise as to guilty knowledge. Giving effect to the statements only made by defendant on the date when her preliminary examination was conducted, no reasonable conclusion other than that she was fully aware that the watch in question had been stolen would seem possible. We conclude that the jury was entirely justified in reaching the implied conclusion not only that defendant had possession of the watch, but that she knew it had been stolen.

Appellant also complains of asserted lack of evidence to prove the fact that either of the watches that was the subject of the prosecution had been stolen. Without here relating the details of the evidence adduced on the trial of the cause in that regard, it may suffice to state that after a careful examination of such evidence, this court is of the opinion that the theft of each of the watches was clearly established.

Further prejudicial error is predicated upon a remark made by the judge of the trial court within the presence and the hearing of the jury. From a consideration of the criticised language employed by the trial judge on the occasion to which appellant has directed attention, this court is convinced that, viewing such language coldly, as standing alone, and from one standpoint only, it was just possible that the jury might have gained the impression that the trial judge was insinuating that defendant had been engaged in an "unlawful vocation"; but considering the context with which such words were spoken and the general situation that is portrayed by the reporter's transcript of the proceedings then before the trial court, it becomes apparent that no such impression from the remark made by the trial judge might properly be received or entertained by the jury. In other words, that, although from a restricted standpoint, the remark of the trial judge might be regarded as objectionable, in its broad aspect, it is not subject to adverse legal criticism. But in addition to that situation, and even assuming that the remark made by the trial judge was prejudicial to the cause of defendant, nowhere in the record does it appear that defendant took any exception

thereto, or that in any way she attempted to avail herself of any of the other remedies to protect her rights, if any, in the premises. Nor was the language of the judge of that character that a reference thereto by any of the interested parties might have emphasized its effect. In the circumstances it is obvious that defendant has no real cause for complaint. (*People* v. *Mendez*, 193 Cal. 39, 48 [223 Pac. 65]; *People* v. *Albori*, 97 Cal. App. 537, 550 [275 Pac. 1017]; *People* v. *Ball*, 102 Cal. App. 353, 358 [282 Pac. 971]; *People* v. *Moreno*, 111 Cal. App. 52, 54 [295 Pac. 50]; *People* v. *Henry*, 132 Cal. App. 557, 562 [23 Pac. (2d) 77].)

 Finally, appellant presents the point that the trial court erred in admitting over her objection evidence that related to the possession by defendant at the time of her arrest of several diamond rings that were found in her suitcase. Of course, ordinarily speaking, any evidence that was confined to the unrelated acquisition by defendant of property that was not alleged to have been stolen and not knowingly received by her as stolen property, was not properly presentable for the consideration of the jury; and if timely and proper objections to questions had been made by defendant in that regard, the admission of answers to such questions, that were detrimental to defendant, might have constituted error on the part of the trial court. But herein the record of the proceedings had on the trial of the action discloses generally that appellant's criticism is unavailing because either no objection was interposed by defendant when the pertinent question was propounded to the witness; or, if any objection to the introduction of such evidence, or motion to strike it out, was made, that such objection or motion was too broad and general in its nature; or, if not within the latter classification, that the question related to the ring that was found with the watch described in count II of the information, and which evidence manifestly tended to show that the watch had been in the possession of the defendant. But in any event, assuming that on one or possibly on two occasions, the evidence regarding the diamond ring was improperly received, it is obvious that since on other occasions practically the same evidence was not erroneously received, the errors of which appellant now complains could not have been prejudicial.

Each of the judgments and the order, by which the motion for new trial was denied, are affirmed.

York, J., concurred.

Doran, J., being disqualified, took no part in the foregoing decision.