[Crim. No. 4305. In Bank.—October 1, 1940.]

THE PEOPLE, Respondent, v. LELAND G. STANFORD, Appellant.

Bertrand L. Comparet and Clarence Harden for Appellant.

Earl Warren, Attorney-General, Eugene M. Elson, Deputy Attorney-General, James B. Abbey, District Attorney of San Diego County, and Seymour Wurfel, Deputy District Attorney, for Respondent.

THE COURT.—This is an appeal from a judgment of conviction of the crime of grand theft, after trial by the court sitting without a jury.

Appellant was employed as the attorney in a proceeding to probate the will of Edwin R. Stevens, deceased, by his widow, Jennie C. Stevens, upon the recommendation of Mrs. Edith Christy who had been a friend of Mrs. Stevens for forty years and who had known appellant since his childhood. Mrs. Stevens was about seventy-five years old at the time, was unaccustomed to business dealings and signed everything appellant gave her to sign. Upon appellant's advice Mrs. Stevens applied for letters testamentary of her deceased husband's estate and was appointed and qualified as executrix. Later, she resigned as executrix and appellant was appointed and qualified as administrator with the will annexed and administered the estate.

On March 5, 1936, and before the estate was closed, at the suggestion of appellant, Mrs. Stevens conveyed to appellant all of her property, including the property to which she was entitled as the sole devisee under her husband's will, in trust for her life, the remainder upon her death to be distributed to designated persons. Appellant later prepared a letter dated July 18, 1936, authorizing him to invest $10,560 of

the trust money in the purchase of property shown to her and Mrs. Christy. The letter stated that according to Mrs. Stevens' instructions appellant was preparing for escrow the purchase of a residence on Palm Street in San Diego; that he was doing so in order that she might place a first mortgage on the place in the sum of $10,560; that he was not borrowing that sum or any sum from her, and that her only security was to be the mortgage on the house; that he intended to live there and pay $44 to her each month, which was the interest provided by the mortgage; that the mortgage was to be for five years and bear interest at the rate of 5 per cent per annum and renewable for an additional period of time at his option. Appellant procured title to said property to be vested in him and his wife, but in appellant's escrow instructions no mention is made of any mortgage nor of any interest in the property on the part of Mrs. Stevens. Appellant procured fire insurance on the house, he and his wife being named as the assured with no mention of Mrs. Stevens' interest.

The mortgage was not executed on the property until September 16, 1937. It was not delivered to Mrs. Stevens and was not recorded until April 21, 1939, which was after The State Bar began an investigation of the matter. (See *Stanford* v. *The State Bar,* 15 Cal. (2d) 721 [104 Pac. (2d) 635].) The mortgage covered only a little more than one-sixth of the total area purchased. Under its unusual and novel terms the mortgagors (appellant and his wife) agreed to pay Mrs. Stevens $45 per month "which sum is understood to be the equivalent of interest at the rate of 5 per cent (5%) per annum on the sum of $10,800 but not actually to be interest on any obligation". It also provided that the mortgagors were not obligated "by promissory note, or any promise at all, to pay to the mortgagee any sum of money whatsoever". The mortgage was to be for five years and was renewable for an additional five years at the option of appellant and his wife. The mortgagee was given the right of foreclosure ninety days after August 15, 1946, at which time Mrs. Stevens would be eighty-six years of age.

On July 18, 1936, appellant, as trustee, drew a check on the trust account for $500 and deposited it in the escrow referred to as the initial payment on the purchase price of the property. This transaction is the basis of count one of the indictment. On July 26, 1936, appellant drew out

the entire balance of the trust account in the sum of $7,-458.80, which he paid into the escrow together with $2,041.20, which he borrowed personally from the bank, as the balance of the purchase price of the property. The use of this sum of $7,458.80 is the basis of count two of the indictment. Thereafter as moneys came into the trust account he applied them to his own use to the extent of the amount which he had personally borrowed and paid into the escrow, and the total amount of these items, $2,041.20, forms the basis of count three of the indictment.

Appellant was found guilty of grand theft on the theory of embezzlement on each of these three counts. On count four charging appellant with the crime of grand theft in that on or about May 27, 1937, he wilfully took the property of Jennie Stevens consisting of the sum of $240, and count five charging him with grand theft in that on or about May 1, 1939, he wilfully took the property of Jennie Stevens in the sum of $675, the trial court found appellant not guilty. Motion for new trial was denied.

There is ample evidence to sustain the judgment of conviction and the order denying the motion for a new trial. Appellant suggested to Mrs. Stevens the creation of the trust of all of her property and that he should be trustee. He knew that Mrs. Stevens was unaccustomed to business dealings, had implicit confidence in him and signed everything he gave her to sign. The funds came into his hands as trust funds and he used them in the purchase of property which became the property of himself and wife. Under the terms of the mortgage there is no assumption of liability by himself or wife but instead there is an express provision therein that neither petitioner nor his wife should be personally liable for the indebtedness. He did not deliver or record the mortgage until three years after the purchase of the property and then only after investigation of his activities was commenced by The State Bar. Moreover, the mortgage embraced only part of the property purchased with the trust funds. Although an attorney, and presumably competent to judge the duties of a trustee, he procured her signature to a document which no person with a knowledge of business would have approved even if there had been no trust relation between the parties.

There is no merit in appellant's contention that the entire transaction could not constitute more than one offense,

and that the conviction of three separate offenses was error. The question of whether a series of wrongful acts constitutes a single or multiple offense must in the last analysis be determined by the peculiar facts and circumstances of each individual case. In the present case the evidence showed that the thefts referred to in the first three counts of the indictment were separate and distinct transactions, which occurred on different dates, and involved the taking of different sums of money. Such separate transactions constituted separate offenses. (*People* v. *Hatch,* 13 Cal. App. 521 [109 Pac. 1097]; *People* v. *Rabe,* 202 Cal. 409 [261 Pac. 303]; *People* v. *Bartnett,* 15 Cal. App. 89 [113 Pac. 879]; *People* v. *McCann,* 96 Cal. App. 664 [274 Pac. 621]; *People* v. *Ellison,* 26 Cal. App. (2d) 496 [79 Pac. (2d) 732]; *People* v. *Miles,* 37 Cal. App. (2d) 373 [99 Pac. (2d) 551]; *Edelhoff* v. *State,* 5 Wyo. 19 [36 Pac. 627]; *State* v. *Davis,* 37 R. I. 373 [92 Atl. 821]; *Storm* v. *Territory,* 12 Ariz. 26 [94 Pac. 1099].)

While transactions in series have frequently been held to constitute but parts of one continuous proceeding, and hence but one offense, this result is more commonly reached in cases of larceny than in those of embezzlement. This follows from the fact that in the crime of larceny the defendant has obtained possession of his victim's property by wrongful means, and completion of the offense is not dependent upon whether he thereafter appropriates the fruits of his theft by a single act or at successive intervals. On the other hand, in the case of an embezzlement, the property is already in the rightful possession of the defendant, and his subsequent fraudulent appropriation is of the essence of the crime. (Pen. Code, sec. 503.) Thus in each of the cases relied upon by appellant (*People* v. *Sing,* 42 Cal. App. 385 [183 Pac. 865]; *People* v. *Bratton,* 125 Cal. App. 337 [14 Pac. (2d) 125]; *People* v. *Fleming,* 220 Cal. 601 [32 Pac. (2d) 593]; *People* v. *Dillon,* 1 Cal. App. (2d) 224 [36 Pac. (2d) 416]), the particular facts and circumstances showed that the exact time of completion of the misappropriation was not controling and for this reason the court was justified in concluding that the several transactions involved constituted one offense. In the present case, the evidence, as already stated, established clearly the commission of separate offenses by distinct appropriations of different sums of money on separate occasions. The rule of *People* v. *Hatch, supra,* and like cases above cited, is therefore the one properly applicable.

Appellant's further contention that there was a fatal repugnancy between the acquittal on the fourth and fifth counts and the conviction on the first three counts, because the transaction which formed the basis of all of the counts was single, is answered by the above discussion. (See, also, *People* v. *Edwards*, 72 Cal. App. 102, 117 [236 Pac. 944], and *People* v. *Stovall*, 94 Cal. App. 635 [271 Pac. 579].)

The judgment and order denying a new trial are, and each of them is, hereby affirmed.