### BOYKIN v. UNITED STATES.
### No. 7954.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1942.

Mr. William E. Richardson, of Washington, D. C., for appellant.

Mr. Dennis McCarthy, Assistant United States Attorney, with whom Messrs. Edward M. Curran, United States Attorney, George E. McNeil, Assistant United States Attorney, and Charles B. Murray, Assistant United States Attorney, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, STEPHENS and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

This case was here on habeas corpus in Boykin v. Huff, 1941, 73 App.D.C. 378, 121 F.2d 865. Pursuant to our decision that the appeal had been noted in time, it has been perfected. The record, including the bill of exceptions, has been prepared several years after the trial through cooperation of the trial justice, the District Attorney, and counsel assigned to represent appellant.

The crime charged was pandering as defined in Section 181, Tit. 6, D.C.Code (1929), Act of June 25, 1910, 36 Stat. 833, c. 404, § 3 [now D.C.Code (1940) §§ 22—2707, 22—2710].

"Any person who shall receive any money or other valuable thing for or on account of procuring for or placing in a house of prostitution or elsewhere any female for the purpose of causing her illegally to cohabit with any male person or persons shall be guilty of a felony, and upon conviction thereof shall be imprisoned for not less than one nor more than five years."

The indictment was in ten counts, each charging a separate offense. All but four were withdrawn or dismissed. Appellant was convicted and sentenced on counts four and eight, acquitted on the other two. Count four charged in substance that on May 23, 1938, he received two dollars for or on account of placing his daughter in specified premises, a hotel, for the purpose of causing her "illegally to cohabit with divers male persons" contrary to the statute. The eighth count was the same except it charged receiving five dollars on May 27, 1938. Sentence was imposed pursuant to conviction on each count.

Appellant questions the sufficiency of the indictment and of the evidence to sustain his conviction and sentence. He also complains of the instructions and that prejudicial evidence was received. Questions concerning the sufficiency of the evidence turn on whether the indictment and the instructions departed from the statute's terms, so as in effect to charge and permit conviction of offenses not defined by it. The primary issues therefore involve the section's proper meaning.

Stated specifically they are: (1) whether the gist of the offense is the receiving of money or the act of placing the woman in the premises with the prohibited intent; (2) whether "cohabit," as used in the section, means promiscuous or casual acts of intercourse with "divers male persons," as the indictment charged, or a more permanent living with one man as mistress or in the manner of husband and wife to outward appearance. Closely allied with the first issue is the question whether the court's instruction was correct that the jury should find appellant guilty if they believed he *"kept,* placed *or maintained"* the girl at the premises for the purpose prohibited by the statute. (Italics supplied.)

Appellant denies that he violated the section under any construction and insists the evidence is insufficient, whether the Government's interpretation or his own is adopted. The evidence discloses only one act which could be found to constitute a *placing* within the section's meaning, namely, when appellant and his daughter moved to the hotel from a nearby room about April 1, 1938. Several acts of receiving money are shown. The two counts in the indictment therefore in the light of the evidence must be taken to refer to a single and identical act of placing, but different acts of receiving money.

Appellant argues that the statute outlaws only the act of placing. He urges therefore that if there is only one such act, for which money is received on several occasions, there is only one crime, not several. The Government takes the view that each act of receiving money, though all are done for or on account of a single placing or procuring, is a separate offense, as in the case of obtaining money by false

pretenses.[1] It is implicit in appellant's view also that receiving money "for or on account of" some other act than placing, such as merely securing patrons for a woman or "keeping" or "maintaining" her unconnected with establishing her where the cohabitation occurs, does not violate the section.

■ The prosecution urges first that these objections come too late because they are raised for the first time on appeal.[2] But in view of the unusual circumstances in which the appeal has been taken and perfected, including the difficulties under which the record has been prepared, and the serious nature of the questions, we think the issues should be considered on the merits. See Boykin v. Huff, supra.

■ The most important question is whether receiving money or placing the woman is the gist of the offense. To convict under the section, the Government must charge and prove: (1) an act of procuring a woman for or placing her; (2) in a house of prostitution or elsewhere; (3) for the purpose of causing her to "cohabit illegally with a male person or persons"; (4) that the defendant received money or other valuable thing; (5) "for or on account of" the procuring or placing.

The Government concedes there must be an act of placing; that the money must be received for or on account of it; and, necessarily therefore, that the prohibited intent must exist when the placing occurs, i. e., to cause the woman to cohabit illegally. It urges however that the intent may be inferred from acts or conduct taking place after the placing.

■ Placing and intent must coincide, but payment need not do so. It may occur before, at or after the placing, but whenever it takes place it must be "for or on account of" that act. The central fact in the statutory structure is, therefore, the act of placing or procuring a woman for the purpose prohibited. Without this, the section does not proscribe the taking of money for causing or aiding to cause illegal cohabitation. It does not punish merely procuring patrons for a woman, or sharing her "earnings," or "keeping" or "maintaining" her, even with intent to cause her to cohabit illegally. In other words, it does not penalize brothel keepers as such, or agents who procure patrons for brothels or for women who carry on "the oldest profession" elsewhere, so long as they do nothing toward bringing the woman there, for that purpose, and for money or value received. The essential evil is procuring women for houses of prostitution and for similar purposes elsewhere for pay. This is shown both by the section's language and by its relation to other sections of the pandering act. Sections 179, 180, 182, 183. The section is one of five. The other four deal with induction of a woman into a house of prostitution by force, threats, fraud or other devices, or with detention there against her will. This one rounds out the statute by striking at the person who for gain procures a woman voluntarily to enter such a place for similar purposes.

■ Conceivably the policy of the statute could be promoted by emphasis upon the amount of money received or the number of payments made for a single act of placing. There is no such stress in Section 181. The amount of money or the value of the thing is neither specified nor limited. Congress was not concerned with what or how much the procurer might take. The section specified simply, "*any* money or other valuable thing." (Italics supplied.) That might be money, property or any other thing of value to what-

---

1 E. g., People v. Rabe, 1927, 202 Cal. 409, 261 P. 303; People v. Ellison, 1938, 26 Cal.App.2d 496, 79 P.2d 732, 733. Other analogies relied on are mailing several letters to further the same scheme to defraud, Badders v. United States, 1916, 240 U.S. 391, 394, 36 S.Ct. 367, 60 L.Ed. 706; Stumbo v. United States, 6 Cir., 1937, 90 F.2d 828, 831; embezzlements by separate misapplications of funds pursuant to a common scheme, People v. McCann, 1929, 96 Cal.App. 664, 274 P. 621, 622; People v. Stanford, 1940, 16 Cal.2d 247, 105 P.2d 969; receiving several instalments of money under one plan to bribe, Patton v. United States, 8 Cir., 1930, 42 F.2d 68, 69; Biddle v. Wilmot, 8 Cir. 1926, 14 F.2d 505. See, also, Seymour v. United States, 8 Cir., 1935, 77 F.2d 577, 581, 99 A.L.R. 880; Fain v. United States, 9 Cir., 1920, 265 F. 473, 475.

2 Cf. Dunn v. United States, 1932, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Dunbar v. United States, 1895, 156 U.S. 185, 191, 192, 15 S.Ct. 325, 39 L.Ed. 390; Kane v. United States, 8 Cir., 1941, 120 F.2d 990, 992; Crapo v. United States, 10 Cir., 1939, 100 F.2d 996, 1000.

ever amount, large or small. It is immaterial whether the procurer receives much or little, though it is necessary that he receive something. Similarly, we think it is not important whether payment is made all at once in a lump sum or in scattered amounts at different times. Congress was no more concerned with the mode or times of payment than with the amount. Its ban was on procuring for pay. How much, how often or in what medium or manner payment might be made were inconsequential details. The prime facts were placing, intent and payment in some form. What form was entirely secondary.[3]

The contrary view would create incongruous results. In the case of two defendants, each receiving the same amount, one paid in a lump sum, the other in ten instalments, for acts otherwise identical, the latter would incur ten times the former's penalty for the same act and the same gain. Merely the number of payments, without regard to differences in amounts received, would be punished. This would add nothing to the section's effectiveness and little if anything to its deterrent force. The penalty is not light. Pyramiding it for merely splitting up the payment hardly could deter one who would incur the risk without that.

Furthermore, the penalty by imprisonment for violation of each of the pandering act's five sections is the same, except that the maximum term in one instance is ten years. Congress hardly intended to apply the penalty but once to the procurer by force, fraud or duress and to double, treble or otherwise multiply it as to another who causes the woman to enter voluntarily, merely because he is paid more than once. Of the two offenses the former is the graver.

■ We think therefore the gravamen of the offense is the act of procuring or placing, not that of receiving money. Taking payment is of course a necessary element. But it is not the gist of the crime. Since appellant was convicted under separate counts, which in the light of the evidence presented to sustain them differed only in charging separate acts of receiving money for a single placing, and was sentenced under each conviction, the sentence was invalid. It was in fact a sentence for two crimes when, as we now hold, only one had been charged under the statute for the acts relied upon.

■ It follows from what has been said that the instructions were erroneous. The jury was told to find defendant guilty if it believed he "kept, placed or maintained" the girl at the premises for the prohibited purpose. The error was in the words "kept * * * or maintained," used alternatively to "placed." The jury could find defendant guilty if they believed he kept or maintained her at the place with the purpose of causing her to cohabit illegally, although they might not believe or find he brought her there with that intent or at all. It permitted them to find him guilty without regard to placing or the intent with which it was done. In this case it is at least doubtful whether there was sufficient evidence to sustain a finding that the prohibited intent existed when they moved to the hotel. A taxicab driver testified he saw defendant in a cafe about that time and the latter asked him "to secure trade" for the girl. Defendant denied this, but neither the date of the conversation nor that of the removal to the hotel was proven except approximately. It is therefore impossible to tell from the record whether the conversation preceded or followed the removal. There was, however, evidence clearly sufficient, though contradicted, to establish "keeping" or "maintaining" the girl with such an intent at later dates. The Government says this is enough to permit the inference the intent existed when the placing occurred. Cf. Agnew v. United States, 1897, 165 U.S. 36, 53, 17 S.Ct. 235, 41 L.Ed. 624; Baer v. United

---

[3] No case directly in point has been found. For somewhat analogous statutes and results, see State v. Cavalluzzi, 1915, 113 Me. 41, 92 A. 937; State v. Howe, 1920, 287 Mo. 1, 228 S.W. 477; State v. Ackerman, 1926, 315 Mo. 219, 285 S.W. 739; State v. Jones, 1915, 51 Mont. 390, 153 P. 282; State v. Pippi, 1921, 59 Mont. 116, 195 P. 556. See, also, People v. Lyons, 1917, 197 Mich. 64, 163 N.W. 484, holding that taking money for procuring a woman to become a prostitute is a different offense from receiving money from the proceeds of a woman's prostitution; People v. Draper, 1915, 169 App.Div. 479, 154 N.Y.S. 1034; People v. Moore, 1911, 142 App. Div. 402, 127 N.Y.S. 98, affords an instance of conviction under a statute identical with Section 181; Note (1931) Constitutionality and construction of pandering acts, 74 A.L.R. 311.

States, 1923, 54 App.D.C. 24, 26, 293 F. 843. Assuming, without deciding, that this may be so, we cannot take the instruction as requiring this finding to be made. Under its terms the jury was equally free, as has been said, to convict the defendant by finding he "kept" or "maintained" the girl at the hotel for the prohibited purpose, though he did not place her there or do so with such an intent; in other words, that the intent or purpose of causing cohabitation did not arise until after they moved to the hotel. Even though keeping and maintaining might be evidence in some circumstances that placing was for the same purpose, in themselves they cannot be grounds for conviction under the section. The Government does not contend that they are. Since the instructions nevertheless permitted conviction for them, defendant may have been convicted for acts not defined as criminal by this statute. The error in the instructions therefore requires reversal.

Except for the possibility of another trial, there would be no need to discuss other issues. That possibility however makes disposition of some of them appropriate.

█ We think appellant's interpretation of "cohabit" is clearly wrong.[4] The section's language is, in this respect, "procuring for or placing *in a house of prostitution,* or elsewhere, any female for the purpose of causing her illegally to cohabit *with any male person or persons * * *.*" (Italics supplied) "Cohabit" in the familial sense is hardly characteristic of a house of prostitution. Moreover, it is extremely unlikely that a woman would "cohabit" with *"any* male person *or persons"* in a permanent relation of mistress in such a place. The words "or persons" show that promiscuous relations were included. To exclude them would render the statute applicable only in very rare cases. Paid procuring for cohabitation in the sense of living exclusively with one man seldom if ever would occur. The statute struck at the common evils of commercialized prostitution and procurement. This appears both from its language and from its context with the other sections on pandering. Nor is it material whether the evil exists in a house of prostitution or elsewhere. The statute condemns the same evil, wherever it occurs. The purpose clearly was to use "cohabit" as including promiscuous and casual relations.

█ We think this is true, notwithstanding the contrary argument from the legislative history. That the House of Representatives struck out "cohabit" and inserted "commit acts of prostitution" and the Senate restored the former, so that the bill was enacted in the statute's present form, is as consistent with Congress' intention that "cohabit" mean what we have held it to mean as it is with the contrary view. That Congress recently has amended the section so as to read, "arranging for or causing any female to have sexual intercourse with any other person or to engage in prostitution, debauchery, or any other immoral act,"[5] does not contradict this. The grounds stated in the Attorney General's recommendation for the change show only that it was made to remove doubt cast upon the statute by a ruling of the District Court, which was clearly erroneous, as we now hold. There had been, in fact, contradictory rulings in that court, and neither therefore can be taken to have settled the law or as showing the intent of Congress.

█ Appellant also complains because the arresting officer was permitted to testify that he and his daughter were registered at the hotel as man and wife, thus imputing to him the crime of incest. The witness apparently volunteered the statement. Defendant's counsel at once demanded withdrawal of a juror. The court overruled the motion. In doing so it stated

---

[4] Appellant relies upon Cutrer v. State, 1929, 154 Miss. 80, 121 So. 106; Luster v. State, 1887, 23 Fla. 339, 2 So. 690; Robinson v. Robinson, 1900, 188 Ill. 371, 58 N.E. 906; Ex parte Nielsen, 1889, 131 U.S. 176, 187, 9 S.Ct. 672, 33 L.Ed. 118, arising from a statute prohibiting polygamy; Johnson v. Commonwealth, 1929, 152 Va. 965, 146 S.E. 289, 291; Martin v. State, 1929, 89 Ind.App. 107, 165 N.E. 763; State v. Tuttle, 1930, 129 Me. 125, 150 A. 490. Appellee cites, to support the "acquired meaning" of sexual intercourse, DeBerry v. DeBerry, 1934, 115 W.Va. 604, 177 S.E. 440, 441; State v. Freddy, 1906, 117 La. 121, 41 So. 436, 437, 116 Am.St.Rep. 195; Herrman v. Herrman, 1916, 93 Misc. 315, 156 N. Y.S. 688, 689; Knowles v. Knowles, 1917, 6 Boyce, Del., 458, 100 A. 569, 570; King v. United States, 4 Cir., 1927, 17 F.2d 61, 62.

[5] D.C.Code (1940) §§ 22—2707, 22—2710.

to the jury the evidence was admitted for the purpose of showing defendant's knowledge of his daughter's activities. There was other evidence clearly sufficient to show this, if believed by the jury. Taking account of this fact, of the nature of the offenses with which defendant was charged, and of the possibility of prejudice the statement presented, it is at least doubtful the statement should have been allowed to remain in for the purpose stated by the court. But we need not decide the question, or whether the statement would be admissible for that purpose in the absence of other evidence to show knowledge, since the grounds already stated require reversal.

Appellant complains of other errors which it is not necessary to discuss. They relate principally to the sufficiency of the evidence in respects other than we have mentioned. Because the record has been made up long after the trial without the aid of stenographic notes, and therefore may not reflect the evidence as accurately as it was given, and because the grounds already stated are sufficient to dispose of the appeal, we refrain from considering these questions.

The judgment is reversed, and the cause is remanded to the District Court for a new trial.

Reversed and remanded.

STEPHENS, Associate Justice (concurring). I agree that the judgment must be reversed. I am in accord with the view of the majority that the gist of the offense is the placing of any female in a house of prostitution or elsewhere for the purpose of causing her illegally to cohabit with any male person or persons, not the receiving of money, and that accordingly the instructions were erroneous, the verdict therefore can not stand, and the sentences imposed under the verdict must be set aside.

I agree also with the view of the majority that the word "cohabit" as used in the statute should be construed not in the strict sense of cohabiting with a single person in the manner of husband and wife but as covering promiscuous and casual relations.

I think the court should rule definitely on the question of the sufficiency of the evidence. In my view the evidence was wholly insufficient to prove beyond a reasonable doubt that at the time the appellant and his daughter went to live at the hotel in question he had a purpose to place her there for the purpose of illegal relations with others. The Government frankly concedes that he must have had such a purpose at that time to be guilty under the statute, and the statute itself makes that obvious.

I think the court should rule that the appellant was entitled to the declaration of a mistrial because of the testimony of the police officer called by the Government that the appellant and his daughter were registered as husband and wife. This statement was in effect an assertion that the appellant was guilty of incest. I think this charge of a crime so heinous and offensive must have prejudiced the jury irretrievably. I cannot think that the court's instruction to limit the testimony to its effect to show the appellant's knowledge of his daughter's activities could have been effective to blot out of the jury's mind the impression given by the officer's statement. Nothing is better settled than that, with certain exceptions, collateral crimes cannot be brought to the attention of a jury. Martin v. United States, 1942, 75 U.S. App.D.C. 399, 127 F.2d 865. It is true of course that if evidence is admissible for some purpose other than that of showing the commission of another crime the mere fact that it discloses the same will not necessarily exclude it. While theoretically the testimony involved here was relevant to the appellant's knowledge of his daughter's activities, it was quite unnecessary for that purpose. To show that the appellant was living at the same hotel as his daughter was sufficient for that purpose; and there was ample other evidence of knowledge of her activities. Under these circumstances I think there was a clear reversible error by the trial court in not declaring a mistrial. Cf. Martin v. United States, supra.