## RUBENSTEIN v. UNITED STATES.

### No. 8983.

United States Court of Appeals District of Columbia.

Argued Nov. 19, 1945.

Decided Jan. 14, 1946.

Mr. Harry S. Wender, of Washington, D. C., with whom Mr. H. Nathaniel Blaustein, of Washington, D. C., was on the brief, for appellant.

Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Daniel B. Maher, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee. Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Mr. Vernon E. West, Corporation Counsel, and Mr. Chester H. Gray, Principal Assistant Corporation Counsel, by leave of court, both of Washington, D. C., filed a brief on behalf of the Commissioners of the District of Columbia as amici curiae.

Before EDGERTON, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from a decree which restrains appellant, a Washington baker, from manufacturing or introducing into commerce in the District of Columbia "any food that consists in whole or in part of filthy or putrid substances or has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth." The court found that appellant had been doing these things. Appellant does not question the findings. His contention is that because his business is a local one, carried on entirely within the District of Columbia, the Federal Food, Drug, and

Cosmetic Act[1] under which action was brought by the United States does not apply.

Section 331 of the Federal Act prohibits "(a) The introduction * * * .into interstate commerce of any food * * * that is adulterated * * * '(g) The manufacture within any Territory of any food * * * that is adulterated * * *." Section 321 defines "Territory" as "including the District of Columbia" and defines "interstate commerce" as "(1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other Territory * * *." Section 342 provides that food shall be deemed "adulterated * * * (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." With exceptions not material here, section 332 gives the district courts jurisdiction to restrain violations of section 331.

On their face the quoted provisions of the Federal Act support the decree appealed from. Appellant's attack upon the decree rests on the premise that these provisions of the Federal Act "parallel in substantially every respect the local laws and regulations upon this subject of adulterated foods." From this premise appellant derives the conclusion that the Federal Act, despite its plain language, is not applicable to local business in the District of Columbia.

We find that both appellant's premise and his conclusion are incorrect.

Chapter 1 of Title 33 of the District of Columbia Code forbids sale or delivery, or possession for sale, of "any article of food or drug which is adulterated within the meaning of this chapter."[2] It does not expressly cover manufacture. It covers only specified kinds of food. These include bread, but do not appear to include the other bakery products to which the Federal

Act, the evidence against appellant, and the injunction relate. This local act defines bread as "adulterated * * * if there is any addition of alum, sulphate of copper, borax, or sulphate of zinc, or other poisonous or harmful ingredient, and if it contains more than thirty-one per centum of moisture, more than two per centum of ash, and less than six and twenty-five one-hundredths per centum of albuminoids."[3] This language appears to be aimed at deliberate adulteration rather than carelessness and filth. This is made clearer by a proviso that no offense is committed if the purchaser's "order calls for an article * * * inferior to such standard, or where such difference is made known by being plainly written or printed on the package." No one contends that appellant deliberately inserted in his goods the filth and rodents which they were proved to contain. Moreover the ingredients named in the local act are vastly different from the filthy and putrid substances named in the Federal Act.

The local act of December 16, 1941, "To prevent the sale of unwholesome food in the District of Columbia"[4] forbids sale of any food which is "unwholesome or unfit for use". It does not, as the Federal Act and the injunction do, cover manufacture as well as sale. It does not, as they do, cover food which is "adulterated" without being "unwholesome or unfit for use."

It is not clear that these local acts prohibit, as the Federal Act does, all of the misconduct which appellant has committed and which the injunction forbids. Moreover these local acts do not specifically provide, as the Federal Act does, for restraint of such misconduct by injunction. The remedies provided by the local acts are condemnation of unwholesome food, criminal prosecution, and revocation of licenses.[5] Revocation of a license is a drastic remedy which prevents proper operations as effectually as improper ones. Criminal convictions for commercial carelessness are rare, and the maximum penalty on conviction under the local acts is a fine of $300 or imprisonment for 90 days.[6] An injunction is a

---

[1] June 25, 1938, 52 Stat.. 1040, 21 U. S.C.A. §§ 301–392.

[2] D.C.Code, 1940, § 33—101, 30 Stat. 246.

[3] § 33—103 (b) ninth.

[4] D.C.Code, 1940, Supp. IV §§ 22—3416 to 22—3422, 55 Stat. 807.

[5] Bakeries are licensed under the General License Law of the District of Columbia. D.C.Code, 1940, §§ 47—2301, 47—2327; 47 Stat. 550, 554. This law authorizes the Commissioners to revoke licenses in the interest of health, and provides for criminal prosecutions. Code, §§ 47—2345, 47—2346, 47 Stat. 563.

[6] D.C.Code, §§ 22—3421, 47—2347.

relatively simple matter and carries with it a prospect of contempt proceedings if the forbidden acts are continued.

We conclude that the provisions of the Federal Act which are involved in this case are not closely paralleled by local law. But even if they were, it would not follow that the local law would supersede the federal instead of supplementing it.[7] When a subject is covered both by a general law which does not mention the District of Columbia and by a local law which provides expressly for the District, a question may arise as to whether Congress did or did not have the District in mind in enacting the general law.[8] But when a general law expressly mentions the District, as the Federal Food, Drug, and Cosmetic Act does, it can hardly be contended that Congress did not have the District in mind when it passed the law.[9] Congress has "followed its usual policy of extending legislation based on the commerce power to the same substantive acts taking place wholly within the District." [10] And in order to preclude any possibility that the local act of 1941, "To prevent the sale of unwholesome food in the District of Columbia", might be interpreted as exclusive, Congress expressly provided that the local act "shall in no respect be considered as a repeal of any of the provisions of the Federal Food, Drug, and Cosmetic Act, but shall be construed as supplemental thereto." [11] Congress could hardly have expressed more clearly its continuing intention that all provisions of the Federal Act should be enforced, in accordance with their terms, in the District of Columbia. The Commissioners of the District, as amici curiae in the present proceeding, express the opinion that the public will be best protected by the combined efforts of the federal and the District food inspection services. Congress appears to have taken the same view.

Affirmed.

[7] Nuckols v. United States, 69 App. D.C. 120, 99 F.2d 353. Cf. Page v. Burnstine, 102 U.S. 664, 26 L.Ed. 268.

[8] Johnson v. United States, 225 U.S. 405, 413, 32 S.Ct. 748, 56 L.Ed. 1142; Kleindienst v. United States, 48 App. D.C. 190, 202; O'Brien v. United States, 69 App.D.C. 135, 99 F.2d 368.

[9] United States v. Beach, 324 U.S. 193, 65 S.Ct. 602.

[10] Id., 324 U.S. at page 195, 65 S.Ct.

603. The Pure Food and Drugs Act of 1906, 34 Stat. 768, 21 U.S.C.A. §§ 1–5, 7 et seq. was repeatedly held to be applicable, according to its terms, to local activity in the District. Galt v. United States, 39 App.D.C. 470; Dade v. United States, 40 App.D.C. 94. It was also held to supersede certain provisions of an earlier local law. District of Columbia v. Coburn, 35 App.D.C. 324.

[11] D.C.Code, § 22–3422.