## KOROL v. UNITED STATES.

### No. 1066.

Municipal Court of Appeals for the District of Columbia.

Argued June 18, 1951.

Decided June 28, 1951.

Ben Lindas, Washington, D. C., with whom Joseph H. Schneider, Washington, D. C., was on the brief, for appellant.

Alfred Hantman, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty., Joseph M. Howard, Asst. U. S. Atty. and Paul M. Steffy, all of Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Defendant, doing business as the Korol Egg Company, was charged with having violated certain provisions of the Federal Food, Drug, and Cosmetic Act [1] in that he introduced and caused to be delivered in interstate commerce misbranded cans containing adulterated eggs. A jury returned a verdict of guilty on two of the four counts of the information, and defendant was duly sentenced. He appeals.

The eggs had been broken and sold in liquid form to a local bakery. The two counts on which defendant was convicted charged that the food thus shipped was both adulterated and misbranded within the meaning of the Act in that (1) the liquid eggs were decomposed and also otherwise unfit for food because they contained bloody whites, chicken embryos, and meat particles, and (2) the containers failed to bear any labels indicating the manufacturer, packer, or distributor, the quantity of the contents, or the common or usual name of the food.[2] By stipulation the in-

1. Tit. 21 U.S.C.A. § 301 et seq., as enacted June 25, 1938.

2. Tit. 21 U.S.C.A. § 331(a) prohibits the introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded. Tit. 21 U.S.C.A. § 321(f) (1) defines "food" as meaning articles used for food or drink for man or other animals. Tit. 21 U.S.C.A. § 342 (a) (3) provides that food is "adulterated" if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food. Tit. 21 U.S.C.A. § 343(e) (1) provides that a food is misbranded if in package form unless it bears a label containing the name and place of business of the manufacturer, packer, or distributor. Tit. 21 U.S.C.A. § 343(e) (2) provides

terstate character of the shipment [3] and the identity of the articles inspected were admitted by defendant.

The evidence showed, without denial, that the operator of a Washington bakery had purchased two cans of eggs from defendant on November 2, 1950, accompanied by an invoice marked "Two cans Eggs—fresh"; that the baker had immediately placed the two cans of eggs in his refrigerator; that the cans remained in his refrigerator until the next day, November 3, when one of the cans was removed for use; that on November 3 a duly qualified inspector for the Food and Drug Administration came into the bakery premises and inspected the eggs; that at the time of the inspection one of the cans had been out of the refrigerator approximately one and a half hours; that the can of eggs in the refrigerator smelled bad the moment the cover was lifted and contained bloody whites and chicken embryos, while the can of eggs that was out of the refrigerator contained bloody whites and meat particles; that the temperature maintained in the refrigerator on November 2–3 ranged from 32°–36° Fahrenheit. The baker also testified that he had other eggs and food in his refrigerator during this period, all of which gave no evidence of deterioration; the baker also testified that neither can bore any markings or labels indicating the manufacturer, the quantity, or the common name of the food contained therein. It was testified, however, that one of the cans did carry "Litchfield" on it.

The same inspector of the Food and Drug Administration testified that he had had extensive training and experience in the examination of foods and food products, particularly with regard to determining the extent of decomposition and other adulteration in eggs; that he made the inspection in question on November 3; that a good egg has no odor and that any odor in eggs is evidence of decomposition; that his examination revealed the fact that the can of liquid eggs in the refrigerator was strongly malodorous and contained bloody whites and chicken embryos and the can outside the refrigerator while "passable" from the standpoint of odor was, in fact, adulterated as shown by the presence of bloody whites and chicken embryos; that neither can bore any labels as required by the Act; that no specimen was taken of the cans nor were the cans retained, the contents being promptly disposed of after the inspection.

A properly qualified expert of the Food and Drug Administration also testified that a good egg has no odor; that liquid eggs which give off an offensive odor are decomposed; that liquid eggs which give off an offensive odor after being stored approximately 24 hours at temperatures of 32°–36° Fahrenheit must have been decomposed at the time they were placed in storage.

Defendant, who was his only witness, admitted on cross-examination that in the course of his business he purchased and used subpar eggs known to the trade as "dirties and leakers"; that prior to the sale of these liquid eggs he had told the inspector of the Food and Drug Administration that he had ceased to break eggs but that on that date he had shipped two cans of liquid eggs to the bakery in question in the District of Columbia.

In his assignments of error and brief defendant maintained that the sale of eggs in the District of Columbia is governed by the District of Columbia health regulations and not by the Federal Food, Drug, and Cosmetic Act, but this assignment of error was withdrawn at oral argument. That the point was not well taken is made clear by the language of the Act itself and has been so decided.[4] Most of

---

that a food shall be deemed to be misbranded if in package form unless it bears a label containing "an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count." Tit. 21 U.S.C.A. § 343(i) (1) provides that a food shall be misbranded if its label does not bear the common or usual name of the food.

3. Tit. 21 U.S.C.A. § 321(b) defines interstate commerce as used in the Act as (1) commerce between any state or territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other territory not organized with a legislative body.

4. Rubenstein v. United States, 80 U.S. App.D.C. 322, 153 F.2d 127.

the other assignments of error discussed in defendant's brief are based on points not raised in the trial court and, according to the statement of proceedings and evidence before us, no evidence covered by such points was offered or received. It is, of course, fundamental that points not raised and properly preserved in the trial court will not be considered on appeal.[5] Exceptions to this rule exist only where plain error has been committed to prejudice in some substantial manner appellant's right to a fair trial.[6] We hold that this case does not constitute such an exception.

Defendant's remaining assignment of error is that there was insufficient proof that the eggs were adulterated within the meaning of the Act. The undisputed testimony recited above, we believe, completely disposes of this contention. The Act forbids the presence in food of *any* decomposition. Even if it were true, as defendant contends, that one bad egg alone could have caused the odor, it seems clear that the presence of even one bad egg would have furnished sufficient proof of decomposition. As was said in A. O. Andersen & Co. v. United States, 9 Cir., 284 F. 542, 545: "It appeared from the cross-examination of the government witnesses that they have heretofore suffered canned salmon containing a small percentage of filthy, decomposed, or putrid matter to pass in interstate commerce unchallenged, but there is no room for controversy over percentages under the statute itself, for it excludes all." [7]

While not raised in the trial court and only inferentially assigned as error, defendant at oral argument urged that the court erred in permitting the Government to introduce oral testimony as to the condition of the contents and absence of markings on the containers of eggs shipped by him, rather than requiring the production of the physical objects themselves. It is to be noted that the stipulation entered in the case recited, among other things, that the two cans of liquid eggs examined by the inspector on November 3 were the same two cans of liquid eggs which had been shipped to the bakery by defendant on November 2. We hold that the testimony of a witness, who by the employment of any of his senses, has obtained personal knowledge of the physical condition or attributes of an article of personal property is primary evidence of its character and condition and the article itself need not be produced.[8] It has also been held that where the object in issue is offensive to the senses and the facts can be established by other evidence, such evidence is sufficient.[9]

We hold finally that the factual issues having been fairly presented to the jury and resolved against defendant, the record discloses no error.

Affirmed.

5. Morton v. United States, 79 U.S.App. D.C. 329, 147 F.2d 28, certiorari denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428; Depina v. United States, 78 U.S. App.D.C. 31, 137 F.2d 673; Miller v. United States, 57 App.D.C. 228, 19 F.2d 702; Packard v. United States, D.C. Mun.App., 77 A.2d 19; Lee v. United States, D.C.Mun.App., 40 A.2d 550.

6. Boykin v. United States, 76 U.S.App. D.C. 147, 130 F.2d 416; McAffee v. United States, 70 App.D.C. 142, 105 F.2d 21, certiorari denied 310 U.S. 643, 60 S.Ct. 1094, 84 L.Ed. 1410; Freeman v. United States, 9 Cir., 158 F.2d 891, certiorari denied 331 U.S. 805, 67 S.Ct. 1187, 91 L.Ed. 1827; Varrella v. United States, D.C.Mun.App., 64 A.2d 310;

District Hauling & Construction Co. v. Argerakis, D.C.Mun.App., 34 A.2d 31.

7. See also United States v. Two Hundred Cases of Canned Salmon, D.C.S.D.Tex., 289 F. 157; United States v. Krumm, D. C.E.D.Pa., 269 F. 848; United States v. Two Hundred Cases of A. T. Catsup, D.C.D.Or., 211 F. 780.

8. Pablo v. United States, 9 Cir., 242 F. 905; Williams v. State, 179 Tenn. 247, 165 S.W.2d 377; Mattson v. Minnesota & N. W. R. Co., 98 Minn. 296, 108 N. W. 517; Watercutter v. State, 21 Ala. App. 248, 108 So. 870; Com. v. Blood, 11 Gray, Mass., 74; Underhill, Criminal Evidence, § 110 (4th ed. 1935); 4 Wigmore, Evidence, § 1181 (3d ed. 1940).

9. Knowles v. Crampton, 55 Conn. 336, 11 A. 593.